### 7497

### STATE v. STEVENSON.

1. SELF-DEFENSE—HUSBAND AND WIFE.—The instruction here that the law would not recognize as provocation in a case of killing a wife with a deadly weapon a blow from her was misleading, as it failed to distinguish between a trivial blow by the wife not reasonably calculated to provoke sudden heat and passion and an assault sufficiently violent in itself or in connection with the assault of another to provoke such heat and passion.

2. IBID.—CASTLE.—The doctrine that a husband attacked in his home by his wife rightfully there should retreat, does not apply to an attack by the wife joined with a trespasser in making the assault.

Before MEMMINGER, J., Chester, Summer term, 1909. Reversed.

Indictment against James Stevenson for murder. From sentence, defendant appeals.

*Mr. W. H. Newbold,* for appellant, cites: *A man is not required to retreat from a trespasser in his own home:* 25 Ency., 273; 24 Am. St. R., 844; 21 Cyc., 823, 828; 82 S. C., 488.

*Solicitor J. K. Henry,* contra.

March 16, 1910.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES.   The appellant was found guilty of the murder of his wife, with recommendation to mercy, and was sentenced to life imprisonment in the penitentiary.

The testimony for the State tended to show that the defendant and the deceased were husband and wife, and with their four children had been living in a tenant house on the farm lands of Martin McFadden, Chester County.

That on Thursday before the homicide, defendant, believing his wife unfaithful to him, had ordered her to take her things and leave his house, and that she had gone to her father's house. On the eighth day of March, 1909, she went back to the house to get her things, and was about to enter when her husband, the defendant, told her to go on away. The deceased called to her father, Tillman Gaston, who was then in the public road about seventy yards away, to come there.

According to Tillman Gaston's statement, when he got there, and before he entered the house, defendant and deceased were talking near the door, "and defendant threw up something to her," and the deceased flew around to him and said, "Lord, James, would you tell such a tale on me?" and slapped or struck him on the arm, and defendant grasped her around the neck; that they, holding to each other by the neck, struggled into the house; that deceased was heard to say: "Don't you shoot me with that pistol," that then Tillman Gaston went to the door of the house and saw defendant still holding deceased around the neck, and also holding a pistol to her side, while deceased was holding defendant around the neck or waist. That he called to defendant: "Be ashamed of yourself. Put that pistol up," that thereupon defendant shot him twice, that he left the house, that he heard two more shots in the house, that soon the defendant came out of the house and pursued him, shooting him twice with the gun, until defendant was finally stopped by Mr. McFadden, who came upon the scene.

Everett Sanders testified that when Tillman Gaston went into the house, he called to deceased to come out, and he heard two shots in quick succession, and saw Gaston come out of the house, holding his hand on his breast, that he heard another shot in the house, and heard deceased say: "Oh, Lordy, don't shoot me no more. If you don't shoot me no more, I might get over this," and then he heard another shot, that then defendant came running out of the

house with his gun, pursuing Tillman Gaston, and shot him twice with the gun.

James Lewis testified that he saw Tillman Gaston go into the house, and that he immediately heard two shots fired, and then Gaston came out of the house, and heard deceased say: "Don't shoot me any more. I will do——" something he could not hear, then the gun fired and he heard her no more, then the defendant came running out of the house and pursued after Tillman Gaston, shooting him twice. This witness heard defendant tell deceased to go away before she entered the porch of the house.

Deceased was found dead in the house a few minutes later, and the autopsy showed a bullet wound just below the breast, and a large gunshot wound through the back into the vitals, in which many small shot were found, and that these wounds produced death.

Defendant's version is about as follows: Joe Stephenson, the half-brother of the defendant, testified that when deceased came to the house she said she had come for her things; that defendant told her to go back, he would see her again; that she commenced cursing, and said she would go in anyway; that defendant said: "Go on away from here; I have done told you to stay away from here;" that deceased went up the steps and ran into defendant and commenced fighting him, and the witness parted them; that she called to her father, who was out in the road; that witness and defendant went into the house; that when her father arrived on the porch defendant told him not to come in; that deceased and her father both went in about the same time, and witness fled through the back door, and as he was getting off the porch he heard two shots, and a little later more shooting. This witness stated that when he left defendant's pistol was on the table, and his gun was in the rack, and that he saw no other weapon. This witness also testified that on Thursday before the difficulty he heard deceased threaten to get defendant—"to put rollers under him."

Defendant testified that he became satisfied of his wife's improper relations with another man on the Thursday before, and had ordered her to leave his house. That as she came into the yard, on March 8th, he ordered her to go back, and that she, with an oath, threatened to cut him if she got to him; that she came up on the steps and struck him; that he pushed her back and told her to go off; that he was in no shape to talk to her on account of her treatment to him; that she waved her hand and called her father to come there; that he saw her father coming; that before her father got there she struck him again, and his brother Joe pushed them apart; that defendant went into the house, and as Tillman Gaston was coming up he ordered him not to enter, and that Gaston, with an oath, rushed on in; that at that time his wife had her hand on the door-facing, and was "just raising sand;" that Gaston bursted on in by her; that he ordered Gaston back, and picked up his pistol, and at that moment he, defendant, was struck in the face; that he shot twice at Gaston; that he was struck again, and heard some one say "kill him;" that when he recovered his senses from the lick he received from Gaston he saw a chair up in the air and he fired again, that he then grabbed his gun, not knowing but that Gaston was right at him, and fired with the gun, but he was shooting at Gaston, and did not see his wife after the first fire he made after he was struck; that he ran out of the house, and didn't remember much what happened after that.

The foregoing statement is not meant to be exhaustive, but is merely intended to show the main facts as contended for by the prosecution and defense in their bearing upon the exceptions to the charge. In charging with respect to the law, as to legal provocation sufficient to reduce a homicide from murder to manslaughter, the Court instructed the jury:

"Where a killing is done with a deadly weapon the law does not recognize any words, no matter how rude and opprobious, as provocation. It requires something in the

nature of personal violence done to the person, no matter how slight. It would not recognize such a thing as a blow from a child or a man's wife. It must be from some other person; no matter how slight, would be recognized as provocation, if it did provoke, and if acting under the influence of that provocation the man struck and killed; otherwise not."

We think the charge was erroneous and harmful, as it eliminated from the law of manslaughter all consideration of the wife's alleged assault upon her husband, either by itself or in connection with the alleged joint assault by the wife and her father. The instruction was misleading in failing to distinguish between a trivial blow by the wife, not reasonably calculated to provoke sudden heat and passion in the husband, and an assault sufficiently violent in itself or in connection with the assault of another to provoke such heat and passion.

Exception is taken to the following charge: "The person seeking to escape on the ground of self-defense must retreat from the difficulty, unless by retreating he would probably endanger his safety. Now that rule is applicable generally with this limitation: It does not apply to a man in his own house as against another wrongfully seeking entrance into the house, or being wrongfully in the house. As against such a man as that the law does not require the tenant or occupier of the house to retreat. He may there stand his ground and defend his castle. But as to one who is in his house, or coming into his house by his invitation, or as against his wife, from whom he has no legal separation, he cannot claim that immunity from retreat. A man until legally separated from his wife has no right to deny her access to his premises, or to any place where he may be. He cannot stand in his premises, deny her access there, and refuse to retreat and defend his castle as against her. The limitation as to retreat would apply as to her.

The law would require him to retreat unless by retreating he would probably endanger his safety."

This charge was erroneous and harmful in that it failed to meet the defendant's theory of the case, viz., that he was assaulted in his house jointly by his wife and her father. Assuming that a husband attacked in his house by his wife, who was there by right, should retreat, such duty would be annulled if the wife joined with a trespasser in making the assault.

The judgment of the Circuit Court is reversed and the case remanded for a new trial.

MR. JUSTICE WOODS, *concurring in the result.* I concur in the opinion of the Chief Justice that there was error in the charge on the first point discussed, but I am unable to agree that there was any error on the second point. The Court did not charge that the defendant was bound to retreat in his own house from Tillman Gaston, but on the contrary, as to Gaston, the jury were instructed, at the request of the defendant, "That one assaulted in his own house may defend himself without attempting to retreat, and may overcome the force used against him with force."