# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Appellant,

v.

Whitlee Jones, Respondent.

Appellate Case No. 2014-002123

---

Appeal From Charleston County
J. C. Nicholson, Jr., Circuit Court Judge

---

Opinion No. 27637
Heard January 13, 2016 – Filed May 18, 2016

---

**AFFIRMED**

---

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General John W. McIntosh, Senior Assistant
Deputy Attorney General Donald J. Zelenka, Assistant
Attorney General Alphonso Simon, Jr., all of Columbia;
Solicitor Scarlett Anne Wilson, of Charleston, for
Appellant.

Chief Appellate Defender Robert Michael Dudek, of
Columbia, for Respondent.

---

**JUSTICE BEATTY:** Whitlee Jones was indicted for the murder of her boyfriend after she fatally stabbed him at their shared residence. In a pretrial motion, Jones asserted immunity from prosecution under the "Protection of

Persons and Property Act" (the Act).[1] Following a hearing, the circuit court judge granted the motion, finding Jones established by a preponderance of the evidence that she was entitled to immunity under section 16-11-440(C) of the Act.[2] In this

---

[1] S.C. Code Ann. §§ 16-11-410 to -450 (2015); *see id.* § 16-11-450(A) (stating, in relevant part, "[a] person who uses deadly force as permitted by the provisions of this article or another applicable provision of law is justified in using deadly force and is immune from criminal prosecution and civil action for the use of deadly force").

[2] Pertinent to this appeal are the following provisions of section 16-11-440:

> (A) A person is *presumed to have a reasonable fear of imminent peril of death or great bodily injury to himself* or another person when using deadly force that is intended or likely to cause death or great bodily injury to another person if the person:
>
> > (1) against whom the deadly force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcibly entered *a dwelling, residence, or occupied vehicle*, or if he removes or is attempting to remove another person against his will from the *dwelling, residence, or occupied vehicle*; and
> >
> > (2) who uses deadly force knows or has reason to believe that an unlawful and forcible entry or unlawful and forcible act is occurring or has occurred.
>
> (B) *The presumption provided in subsection (A) does <u>not</u> apply if the person*:
>
> > (1)     *against whom the deadly force is used has the right to be in or is a lawful resident of the dwelling, residence, or occupied vehicle* including, but not limited to, an owner, lessee, or titleholder; or
> >
> > * * *
>
> (C) A person who is not engaged in an unlawful activity and *who is attacked in <u>another place</u> where he has a right to be, including, but not limited to, his place of business*, has no duty to retreat and has the

direct appeal,[3] the State challenges the judge's order on two assertions of error: (1) section 16-11-440(C) is inapplicable because the stabbing occurred within Jones's residence and not "another place where [s]he ha[d] the right to be" as identified in subsection (C); and, alternatively, (2) Jones failed to establish that she was acting in self-defense when she stabbed her boyfriend. We affirm.

## I.     Factual / Procedural History

During the early morning hours of November 2, 2012, Jones fatally stabbed Eric Lee, her live-in boyfriend, one time in the chest while in their shared residence. The events leading up to the stabbing were established during the pretrial hearing.

In her written statement to police, Jones recounted that during the evening of November 1, 2012, she and Lee were involved in a physical altercation over a cell phone that Lee had purchased and given to Jones. According to Jones, Lee began pushing her and punching her as she began to leave their apartment. Jones stated that, while she was outside the apartment, Lee pulled her hair and attempted to force her back inside. During this confrontation, some of Jones's hair weave was removed from her head as Lee dragged her down the street. A neighbor, who witnessed the commotion, called 911 for help at 11:28 p.m. Jones claimed that Lee continued to try and force her back into the apartment. After she threw the phone on the ground, Jones was able to flee the apartment when Lee went to retrieve the phone. At some point during the confrontation, Jones called her friend, Erica Grant, and left a voicemail message urging Grant to pick her up from the apartment. The message also recorded Jones repeatedly pleading for Lee to "get off" of her.

right to stand his ground and meet force with force, including deadly force, if he reasonably believes it is necessary to prevent death or great bodily injury to himself or another person or to prevent the commission of a violent crime as defined in Section 16-1-60.

S.C. Code Ann. § 16-11-440(A), (B), (C) (2015) (emphasis added).

[3] *See State v. Duncan*, 392 S.C. 404, 407 n.2, 709 S.E.2d 662, 663 n.2 (2011) (finding an order granting a motion to dismiss under the Act is immediately appealable); *see also State v. Isaac*, 405 S.C. 177, 747 S.E.2d 677 (2013) (clarifying *Duncan* and holding that the denial of a request for immunity is not immediately appealable).

Jones stated that she returned to the apartment after she "cooled down." When she opened the door, Jones observed Lee throwing her things around. After Jones called her cousin, Jasmine Taylor, to pick her up, she began collecting her things as Lee yelled at her that "[it's] over" and "rush[ed][her] to leave." When Taylor and Grant arrived at the apartment, Jones began to place her belongings in the car. According to Jones, Lee followed her around the apartment making sure that she did not take any of his possessions. Taylor, who assisted Jones while Grant remained in the car, testified that Lee continued to argue with Jones.

Jones stated that when she went upstairs to retrieve her shoes, she noticed a knife and "grabbed it for protection." After the three went downstairs, Jones and Lee remained in the living room while Taylor stood outside the living room. Jones stated that Lee "started yelling and pushing me again telling me to get out." Jones further claimed that Lee then grabbed her, asked her if she was mad, and began shaking her while telling her "It's over. It's your fault." Because Jones believed that Lee was getting ready to hit her again, she "grabbed the knife out of [her] shirt and stabbed him" one time in the chest. Jones then ran out of the apartment. Taylor did not witness the stabbing, but stated that she heard an "uh" before Jones ran out.

Taylor and Jones then got into Grant's car and drove away. However, they only drove around the corner before Jones told them to turn around and admitted that she had stabbed Lee. They returned to the apartment where they found Lee on the ground in the doorway. Taylor testified that Lee was still conscious and was moaning. Jones and Taylor drove Lee to the hospital where he later died. Grant remained at the apartment to wait for police, who had been called by a neighbor at 12:12 a.m. on November 2, 2012 to report what had happened.

Subsequently, a Charleston County grand jury indicted Jones for murder. Jones asserted immunity from prosecution under section 16-11-440(C) of the Act. Following a hearing, the circuit court judge granted Jones's motion. Initially, the judge noted that section 16-11-440(A) would not apply in Jones's case because Lee was a lawful resident of the place where the stabbing occurred. As a result, the judge found Jones was "defaulted to Section (C)." The judge explained:

Section (C) operates in a similar manner as section (A), but does not allow for the presumption of reasonable fear. Because [Lee] was a co-resident, subsection (A) is inapplicable to [Jones] and she is therefore defaulted into subsection (C).

In so ruling, the judge rejected the State's argument that the language in subsection (C), "in another place where he has a right to be," would exclude Jones's dwelling, residence or occupied vehicle, because those places are expressly identified in subsection (A).  The judge determined "the 'another place' language is intended to encompass dwellings, residences or occupied vehicles, along with any other place where a person has a right to be and is acting lawfully."

The judge explained that "[o]ne seeking to utilize section (C) against another co-resident simply loses the presumption of reasonable fear of imminent peril of death or great bodily injury" as provided in section (A).  The judge recognized that while section (C) applies to an incident that occurs in a dwelling, residence or occupied vehicle, it removes the presumption of reasonable fear.  The judge reasoned that "[t]o hold that a person cannot utilize Section 16-11-440(C) if the person were inside of their own home would create a nonsensical result--that a person can defend themselves from attack by their spouses, lovers, or any other co-resident while outside of their home, but not inside of their home."

Applying subsection (C), the judge found Jones established by a preponderance of the evidence that she was entitled to immunity under section 16-11-440(C) because she:  (1) was not engaged in unlawful activity at the time of the attack; (2) was attacked in a place where she had a right to be; (3) did not have a duty to retreat but, rather, had the right to stand her ground and meet force with deadly force; and (4) acted in self-defense.  The State filed a direct appeal from this order.

## II.     Standard of Review

"A claim of immunity under the Act requires a pretrial determination using a preponderance of the evidence standard, which this court reviews under an abuse of discretion standard of review." *State v. Curry*, 406 S.C. 364, 370, 752 S.E.2d 263, 266 (2013); *see State v. Duncan,* 392 S.C. 404, 411, 709 S.E.2d 662, 665 (2011) (recognizing that the proper standard for the circuit court to use in determining immunity under the Act is a preponderance of the evidence).  An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support. *State v. Pittman*, 373 S.C. 527, 647 S.E.2d 144 (2007).

## III.    Discussion

### A.    Arguments

The State contends Jones is not immune from prosecution under section 16-11-440(C) because the stabbing occurred in Jones's residence and not in "another place where she had a right to be" as identified in subsection (C).  Because the South Carolina Legislature used the phrase "dwelling, residence, or occupied vehicle" in subsections (A), (B), (D), and (E) of section 16-11-440, the State maintains the Legislature's purposeful use of the term "another place" in subsection (C) means the Legislature clearly intended subsection (C) to apply to places other than a defendant's dwelling, residence, or occupied vehicle.

Further, the State argues that if the Legislature intended the Act to cover scenarios similar to the one presented in Jones's case, then subsection (B) would not expressly limit the application of subsection (A) when the person "[a]gainst whom the deadly force is used has the right to be in or is a lawful resident of the dwelling, residence, or occupied vehicle."  Finally, the State asserts the legislative intent of the Act was to expand the common law Castle Doctrine to include an occupied vehicle and place of business, which was accomplished by the enactment of subsections (A) and (C), respectively.

Even if subsection (C) is applicable, the State claims the judge erred in finding Jones established that she was acting in self-defense when she stabbed Lee.  The State submits the evidence in the record does not support the judge's determination that Jones believed she was in imminent danger of losing her life or sustaining bodily injury and that such fear was reasonable.  The State notes that no witnesses saw Lee hit or attack Jones just prior to the stabbing.  The State also points out that Jones voluntarily returned to the apartment after the initial physical altercation and was not being held against her will as Lee was insisting that she leave the apartment.  Consequently, the State contends the judge erred in granting Jones immunity from prosecution under the Act.

**B.	Analysis**

**1.	Applicability of Subsection (C)**

**a.	Castle Doctrine Codified / Default into Subsection (C)**

Under the Castle Doctrine, "[o]ne attacked, without fault on his part, on his own premises, has the right, in establishing his plea of self-defense, to claim immunity from the law of retreat, which ordinarily is an essential element of that defense." *State v. Gordon*, 128 S.C. 422, 425, 122 S.E. 501, 502 (1924) (citation omitted).  The Legislature explicitly codified the Castle Doctrine when it promulgated the Act and extended its protection, when applicable, to include an occupied vehicle and a person's place of business.  *See* S.C. Code Ann. § 16-11-420(A) (2015) ("It is the intent of the General Assembly to codify the common law Castle Doctrine which recognizes that a person's home is his castle and to extend the doctrine to include an occupied vehicle and the person's place of business.").

As explained by this Court in *Curry*[4], "[s]ection 16-11-440(A), the main thrust of the Act, provides a presumption of reasonable fear of imminent peril of death or great bodily injury to a person who uses deadly force if he is attacked by or attempting to remove another from a dwelling, residence or occupied vehicle." *Curry*, 406 S.C. at 370, 752 S.E.2d at 266.  "However, the presumption of subsection (A) does not apply if the victim has an equal right to be in the dwelling or residence." *Id.*

Here, there is no dispute that Lee had an equal right to be in the apartment at the time of the stabbing.  Thus, as recognized by this Court in *Curry*, Jones was defaulted into seeking immunity under subsection (C), which deals with the use of force by one who is attacked in another place where he has a right to be.  *See Curry*, 406 S.C. at 370, 752 S.E.2d at 266 (concluding defendant, who sought

---

[4]  In *Curry*, the defendant and the victim were socializing at the defendant's mother's apartment when an argument and fight ensued.  *Curry*, 406 S.C. at 369, 752 S.E.2d at 265.  The defendant shot the victim based on the belief that the victim was lunging towards him.  *Id.*  At the close of the State's case, the defendant moved for a directed verdict pursuant to the Act.  *Id.*  The trial judge denied the motion and the jury convicted the defendant of voluntary manslaughter.  *Id.*  This Court found evidence supported the judge's denial of immunity under subsections (A) and (C) of section 16-11-440.  *Id.* at 370-72, 752 S.E.2d at 266-67.

immunity under the Act after he fatally shot the victim, was defaulted into section 16-11-440(C) where the victim was a social guest and rightfully in the defendant's mother's apartment).

While *Curry* is instructive, our decision is not dispositive of the instant appeal. First, we did not expressly analyze whether a residence qualifies as "another place" under subsection (C). Second, the decision in *Curry* was presented in the posture of a directed verdict motion and a jury charge issue rather than a motion for pretrial immunity. Third, unlike Jones and Lee, the defendant and the victim in *Curry* were not cohabitants in the residence since the shooting occurred in the defendant's mother's apartment. Finally, *Curry* did not resolve all issues regarding the Act as we stated that "[t]he full reach of the Act and whether the statutory provisions in the Act extend beyond the common law Castle Doctrine are questions for another day." *Curry*, 406 S.C. at 373, 752 S.E.2d at 267.

### b. Interpretation of Subsection (C)

Although this Court tangentially addressed the applicability of section 16-11-440(C) in *Curry*, the Court of Appeals has on two occasions expressly interpreted this provision. The court, however, reached conflicting results.

In *Manning*, the defendant was charged with murder following the death of his girlfriend at the defendant's home. *State v. Manning*, Op. No. 5228 (S.C. Ct. App. filed May 7, 2014) (Shearouse Adv. Sh. No. 18 at 16). The defendant claimed immunity from prosecution under the Act and, alternatively, claimed self-defense. *Id.* After the trial judge denied the defendant's pretrial motion for immunity, the matter proceeded to trial and the defendant was convicted of voluntary manslaughter. *Id.* The Court of Appeals issued a published opinion affirming Manning's conviction and sentence on May 7, 2014. *Id.* In reaching its decision, the court held in part that, based upon a plain reading of section 16-11-440(C), "the language 'in another place' refers to a place *other than one's dwelling, residence*, or occupied vehicle, as subsection 16-11-440(A) governs unlawful acts in one's dwelling, residence, or occupied vehicle." *Id.* at 23 (emphasis added). However, the court withdrew the opinion, granted rehearing, and subsequently held new oral arguments after the retirement of one of the judges on the panel.[5]

---

[5] Despite the withdrawal of this opinion, members of the Bench and Bar continue to cite it as authority in opposition to a defendant's claim of immunity under section 16-11-440(C). Therefore, we find it necessary to address this decision in our analysis.

Following re-argument, the Court of Appeals affirmed in part and remanded in an unpublished opinion. *State v. Manning*, Op. No. 2014-UP-411 (S.C. Ct. App. filed Nov. 19, 2014), *cert. granted* (May 20, 2015). This decision, however, did not address the applicability of section 16-11-440(C).

One month after *Manning* was decided, the Court of Appeals issued its decision in *State v. Douglas*, 411 S.C. 307, 768 S.E.2d 232 (Ct. App. 2014), *cert. granted* (Nov. 5, 2015). In *Douglas*, the defendant was arrested and indicted for the murder of an acquaintance while at the defendant's residence. *Id.* at 312, 768 S.E.2d at 235. Prior to trial, the defendant filed a motion to dismiss the case on the ground he was entitled to immunity pursuant to section 16-11-440(C). *Id.* At the hearing on the motion, the defendant testified that after a day of golfing and drinking, he and the victim went back to the defendant's residence where they continued drinking. *Id.* at 313, 768 S.E.2d at 236. After the victim excused himself to use the restroom, he returned to the living room holding a bottle of the defendant's anti-anxiety medication. *Id.* The victim continued to taunt the defendant about the medication and refused to relinquish the bottle. *Id.* During the resultant physical altercation, the defendant fatally shot the victim. *Id.* at 314, 768 S.E.2d at 236. The State appealed the circuit court's order granting the defendant's motion for immunity. *Id.* at 315, 768 S.E.2d at 237.

The Court of Appeals affirmed based upon its interpretation of section 16-11-440(C). In so ruling, the court reasoned:

> The State places emphasis on the word "another" in the phrase "another place where [the accused] has a right to be" in subsection (C) of section 16-11-440. The primary definition of "another" is "different or distinct from the one first considered." *Merriam Webster's Collegiate Dictionary* 51 (11th ed. 2003). This definition would arguably modify "place," as used in section 16-11-440(C), in such a way as to make "dwelling, residence, or occupied vehicle" and "another place" mutually exclusive. This is the interpretation the State proposes. On the other hand, the second and third definitions of "another" are "some other" and "being one more in addition to one or more of the same kind," respectively. *Id.* The third definition is more inclusive and arguably would *not* eliminate "dwelling, residence, or occupied vehicle" as a possible "place" where the person using deadly force has a right to be pursuant to section 16-11-440(C).

＊　＊　＊

> The General Assembly's use of this language in section 16-11-420
> clearly indicates its intent to provide the protections of the Act to
> persons within their own home facing not only unwelcome intruders
> but also "attackers," including those who are initially invited into the
> home and later place the homeowner in reasonable fear of death or
> great bodily injury.  Further, the language of section 16-11-440(C)
> itself indicates that its application is not limited to businesses.
> Therefore, the more inclusive definition of "another" is the proper
> definition to employ in interpreting section 16-11-440(C).  *See*
> *Sparks,* 406 S.C. at 128, 750 S.E.2d at 63 ("A statute as a whole must
> receive practical, reasonable, and fair interpretation consonant with
> the purpose, design, and policy of lawmakers." (citation and quotation
> marks omitted)); *Broadhurst*, 342 S.C. at 380, 537 S.E.2d at 546
> ("All rules of statutory construction are subservient to the one that the
> legislative intent must prevail if it can be reasonably discovered in the
> language used, and that language must be construed in the light of the
> intended purpose of the statute." (citation omitted)).

*Douglas*, 411 S.C. at 330-31, 768 S.E.2d at 245.

We agree with the Court of Appeals that the phrase "another place" in subsection (C) encompasses a residence.  However, while *Douglas* resolved the discrete point of law that Jones's residence qualifies as "another place" where she had the right to be, the instant case requires further analysis as it implicates a policy decision regarding immunity under the Act for domestic situations.

In particular, we must evaluate the propriety of the circuit court judge's statement that "[t]o hold that a person cannot utilize Section 16-11-440(C) if the person were inside of their own home would create a nonsensical result--that a person can defend themselves from attack by their spouses, lovers, or any other co-resident while outside of their home, but not inside of their home."  We agree with the judge's assessment because the legislative history and text of the Act reveal that the Legislature did not intend such an absurd result.  *See Bryant v. State*, 384 S.C. 525, 529, 683 S.E.2d 280, 282 (2009) ("The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature."); *State v. Baucom*, 340 S.C. 339, 342, 531 S.E.2d 922, 923 (2000) ("All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed

in the light of the intended purpose of the statute."); *Unisun Ins. Co. v. Schmidt*, 339 S.C. 362, 368, 529 S.E.2d 280, 283 (2000) ("We will reject a statutory interpretation when to accept it would lead to a result so plainly absurd that it could not have been intended by the legislature or would defeat the plain legislative intention.").

We need not delve too deeply into the statutory language to discern the intended purpose of the Act as the Legislature explicitly stated in the Preamble that it was enacted to "authorize the lawful use of deadly force against an intruder *or attacker in a person's dwelling, residence*, or occupied vehicle under certain circumstances." Act No. 379, 2006 S.C. Acts 2908, 2908 (emphasis added). Although the Preamble generally identifies the fundamental purpose of the Act, the Legislature clearly enunciated its intent and reasons for promulgating the Act in section 16-11-420, which states:

(A) It is the *intent of the General Assembly to codify the common law Castle Doctrine which recognizes that a person's home is his castle* and to extend the doctrine to include an occupied vehicle and the person's place of business.

(B) The General Assembly finds that it is *proper for law-abiding citizens to protect themselves*, their families, and others *from* intruders and *attackers without fear of prosecution* or civil action for acting in defense of themselves and others.

(C) The General Assembly finds that Section 20, Article I of the South Carolina Constitution guarantees the right of the people to bear arms, and *this right shall not be infringed*.

(D) The General Assembly finds that *persons residing in* or visiting *this State have a right to expect to remain unmolested and safe within their homes*, businesses, and vehicles.

(E) The General Assembly finds that no person or victim of crime should be required to surrender his personal safety to a criminal, *nor should a person or victim be required to needlessly retreat in the face of* intrusion or *attack*.

S.C. Code Ann. § 16-11-420 (2015) (emphasis added).  In order to accomplish these objectives, the Legislature enacted section 16-11-440.  This section identifies the circumstances for which a person may invoke the protection of the Act.

Section 16-11-440(C) is broadly worded and, as recognized in *Douglas*, does not eliminate the inclusion of a residence as "another place."  Specifically, subsection (C) states:

> A person who is not engaged in an unlawful activity and *who is attacked in another place where he has a right to be, including, but not limited to, his place of business*, has no duty to retreat and has the right to stand his ground and meet force with force, including deadly force, if he reasonably believes it is necessary to prevent death or great bodily injury to himself or another person or to prevent the commission of a violent crime as defined in Section 16-1-60.

*Id.* § 16-11-440(C) (emphasis added).  By using the language "but not limited to, his place of business," we find the Legislature intended the protection of subsection (C) to apply to incidents, provided the other requirements are met, without a geographical restriction.

Contrary to the State's position, the elimination of the presumption of reasonable fear from subsection (C) as provided in (A) did not remove the Act's protection from one attacked in his or her home by a cohabitant.  Rather, we believe the Legislature intended to authorize a cohabitant to invoke the protection of the Act but required this person to establish his or her reasonable fear of the attacker.  We find the Legislature did so in order to differentiate between an intruder, who is presumably a violent stranger intent on harming the residents, versus a "household member"[6] or a cotenant, who is presumably a welcome member of the home.

To interpret 16-11-440(C) as the State proposes would improperly limit the protection of the Act based on the geography of the incident and the identity of the assailant.  Moreover, under the State's interpretation, one charged with a violent

---

[6] Defining a "household member" as a spouse, former spouse, persons who have a child in common, or a male and female who are cohabiting or formerly have cohabited.  S.C. Code Ann. § 16-25-10(3) (Supp. 2015).

crime against a cohabitant in their shared residence would *never* be entitled to immunity from prosecution despite the inclusion of section 16-11-440(C) in the Act.

Furthermore, we believe a decision that prohibits a person, who is attacked in his or her residence, from seeking immunity under the Act would not only be in direct contravention of the provisions of the Act but would undoubtedly infringe on the person's Second Amendment right to bear arms, which was specifically identified in section 16-11-420(C) as a foundational basis for the Act.[7] *See District of Columbia v. Heller*, 554 U.S. 570, 628 (2008) ("[T]he inherent right of self-defense has been central to the Second Amendment right.").

Consequently, in order to effectuate the Legislature's intent to protect persons in South Carolina from violence being perpetrated upon them, particularly in their residence or "Castle," we conclude Jones was authorized to invoke the protection of the Act under section 16-11-440(C) because her residence qualified as "another place" that she had a right to be.

### c.    Pre-Act Castle Doctrine Cases

Notably, our conclusion is consistent with decisions from this Court that pre-date the Act, particularly the seminal Castle Doctrine case of *State v. Gordon*, 128 S.C. 422, 122 S.E. 501 (1924), which states:

> Where a house, premises, or place of business is jointly occupied, used, and possessed by two persons, as by partners, joint tenants, or tenants in common, each joint occupant, being equally entitled to possession, *need not retreat when attacked while in the building or premises by the other joint occupant*.

*Id.* at 426, 122 S.E. at 502 (citation omitted) (emphasis added); *see Robinson v. State*, 308 S.C. 74, 417 S.E.2d 88 (1992) (discussing, in dicta, law of self-defense with respect to battered woman's syndrome and noting that a battered woman who acts while on her own premises has no duty to retreat); *State v. Grantham*, 224 S.C.

---

[7] U.S. Const. amend. II ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."); S.C. Const. art. I, § 20 (providing in part that "[a] well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed").

41, 77 S.E.2d 291 (1953) (holding that husband who shot and killed his wife while she was advancing upon him with a knife in their home was not bound to retreat in order to invoke the benefit of self-defense); *but see State v. Stephenson*, 85 S.C. 247, 252, 67 S.E. 239, 241 (1910) ("Assuming that a husband attacked in his house by his wife, who was there by right, should retreat, such duty would be annulled if the wife joined with a trespasser in making the assault.").

### d.    Policy Rationale

Our decision is also aligned with the majority of jurisdictions in the United States that apply "Stand Your Ground" laws to protect victims of domestic violence who are, in general, cohabitants in a residence.

Whether a victim of domestic violence may invoke immunity from prosecution under the provisions of Stand Your Ground laws has been the subject of much debate amongst legal scholars. *See, e.g.*, Brandi L. Jackson, *No Ground On Which to Stand:  Revise Stand Your Ground Laws So Survivors of Domestic Violence are No Longer Incarcerated for Defending Their Lives*, 30 Berkeley J. Gender L. & Just. 154, 168-70 (2015) (noting that "[s]ome SYG jurisdictions have limited the application of the defense to only those situations where an *intruder* attacked the defendant, depriving domestic violence survivors of the SYG privilege when their attacker is an intimate partner or a cohabitant," but recognizing several jurisdictions have abolished "the distinction between an intruder and co-occupant when evaluating whether the defendant could invoke the SYG defense").

Appellate courts have responded by authorizing a person, who is charged with a violent crime against a cohabitant that occurs in their residence, to invoke the doctrine of self-defense and seek immunity from prosecution. *See, e.g., State v. White*, 819 N.W.2d 473 (Neb. Ct. App. 2012) (adopting majority rule that the privilege of non-retreat should apply equally regardless of whether the attacker is a cohabitant or an unlawful entrant); *State v. Effler*, 698 S.E.2d 547 (N.C. Ct. App. 2010) (recognizing that ordinarily a person is not required to retreat when assaulted in his dwelling or within the curtilage thereof, whether the assailant be an intruder or lawful occupant of the premises); *State v. Thomas*, 673 N.E.2d 1339, 1343 (Ohio 1997) ("The majority of jurisdictions in the United States have held that there is no duty to retreat when one is attacked in one's home, regardless of whether or not the assailant has a right to be in the home equal to that of the one being assailed."); *State v. Harden*, 679 S.E.2d 628, 640 (W.Va. 2009) (adopting majority position and holding that "an occupant who is, without provocation, attacked in his or her home, dwelling or place of temporary abode, by a co-

occupant who also has a lawful right to be upon the premises, may invoke the law of self-defense and in such circumstances use deadly force, without retreating, where the occupant reasonably believes, and does believe, that he or she is at imminent risk of death or serious bodily injury"). *See Generally* Linda A. Sharp, Annotation, *Homicide: duty to retreat where assailant and assailed share the same living quarters*, 67 A.L.R. 5th 637 (1999 & Supp. 2015) (collecting state cases involving the question of whether a person attacked in his or her living quarters, which the person shared or occupied with the assailant, is under a duty to retreat before using deadly force to repel the attack; recognizing majority view that there is no rational reason for a distinction between an intruder and a cohabitant when considering the policy for preserving human life in the domicile).[8]

### 2.    Self-Defense

Having determined that subsection (C) is applicable to the facts of the instant case, the question becomes whether there is evidence to support the judge's ruling that Jones acted in self-defense.

---

[8]  In view of the ongoing conflict over the language of section 16-11-440(C), the Legislature may wish to clarify this provision.  Further, we take this opportunity to invite the Legislature to evaluate the language of section 16-11-450, which states:

> A person who uses deadly force as permitted by the provisions of this article *or another applicable provision of law* is justified in using deadly force and is immune from criminal prosecution and civil action for the use of deadly force, unless the person against whom deadly force was used is a law enforcement officer acting in the performance of his official duties and he identifies himself in accordance with the applicable law or the person using the deadly force knows or reasonably should have known that the person is a law enforcement officer.

S.C. Code Ann. § 16-11-450(A) (2015) (emphasis added).  We believe the use of the language "or another applicable provision of law," which presumably includes the common law of self-defense, arguably entitles all defendants who claim self-defense to a pretrial determination of immunity under the Act.  *See Singleton v. State*, 313 S.C. 75, 82, 437 S.E.2d 53, 58 (1993) ("The common law remains in full force and effect in South Carolina unless changed by clear and unambiguous legislative enactment.").

"Consistent with the Castle Doctrine and the text of the Act, a valid case of self-defense must exist, and the trial court must necessarily consider the elements of self-defense in determining a defendant's entitlement to the Act's immunity." *State v. Curry*, 406 S.C. 364, 371, 752 S.E.2d 263, 266 (2013). Therefore, the defendant must demonstrate the elements of self-defense, save the duty to retreat, by a preponderance of the evidence. *Id.* However, if section 16-11-440(A) applies, there is no requirement that the defendant prove he believed he was in imminent danger of losing his life or sustaining serious bodily injury given the presumption of reasonable fear of imminent peril of death or great bodily injury is included in subsection (A).

In order to establish a case of self-defense, the defendant must demonstrate the following elements:

> First, the defendant must be without fault in bringing on the difficulty. Second, the defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger. Third, if his defense is based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have entertained the same belief. If the defendant actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life. Fourth, the defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance.

*Curry*, 406 S.C. at 371 n.4, 752 S.E.2d at 266 n.4 (quoting *State v. Davis*, 282 S.C. 45, 46, 317 S.E.2d 452, 453 (1984)).

Under this Court's deferential standard of review, we hold there is evidence to support the judge's findings as to each element of self-defense. First, there is nothing in the record to suggest that Jones was at fault in bringing on the difficulty as she attempted to leave the apartment before the first altercation, returned the disputed cell phone to Lee, and contacted her friends to pick her up from the apartment. Second, Jones claimed in her statement that she believed Lee was going to hit her again and that had she not acted as she did, then she would have been killed. Third, Jones's belief that she was in imminent danger of losing her life

or sustaining great bodily injury[9] was reasonable given Lee's actions toward her earlier in the evening, which included Lee punching Jones, dragging her by her hair, and forcing her back into the apartment.  Further, Jones stated that as she was leaving the apartment Lee grabbed her, asked her if she was mad, and began shaking her while telling her "It's over.  It's your fault."  Finally, as previously discussed, Jones had no duty to retreat because she was attacked in her own home.

## IV.    Conclusion

We conclude the circuit court judge properly granted Jones immunity from prosecution pursuant to section 16-11-440(C) because Jones's residence qualified as "another place" where she had the right to be, she met the other statutory requirements, and there is evidence to support the judge's ruling that Jones acted in self-defense.

Accordingly, we affirm the judge's order granting Jones immunity from prosecution.

**AFFIRMED.**

**KITTREDGE, HEARN, JJ., and Acting Justice James E. Moore, concur. PLEICONES, C.J., concurring in result only.**

---

[9]  As defined by the Act, "great bodily injury" means "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of a bodily member or organ."  S.C. Code Ann. § 16-11-430(2) (2015).