# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Marquez Devon Glenn, Petitioner.

Appellate Case No. 2018-001478

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Greenville County
The Honorable John C. Hayes, III, Circuit Court Judge

---

Opinion No. 27935
Heard October 29, 2019 – Filed December 18, 2019

---

## REVERSED AND REMANDED

---

Christopher Todd Brumback and John Hampton Scully, both of Brumback & Langley, LLC, and Roy F. Harmon, III, of Harmon & Major, all of Greenville, for Petitioner.

Attorney General Alan McCrory Wilson; John Benjamin Aplin, of SC Department of Probation, Parole and Pardon Services, both of Columbia, and Solicitor William Walter Wilkins, III, of Greenville, for Respondent.

---

**JUSTICE HEARN:**    We granted Marquez Devon Glenn's petition for a writ of certiorari to determine whether the court of appeals erred in affirming the circuit court's denial of immunity from prosecution under the Protection of Persons and Property Act ("the Act"), S.C. Code Ann. §§ 16-11-410 to 450 (2015). *State v. Glenn*, Op. No. 2018-UP-169 (S.C. Ct. App. filed Apr. 25, 2018).  We reverse the decision of the court of appeals and remand for a new immunity hearing.

## FACTUAL/PROCEDURAL BACKGROUND

On the evening of April 12, 2013, Petitioner Marquez Glenn was invited to the Spring Grove apartment complex in Taylors, South Carolina by tenants Shelricka Duncan and Kiana Grayson.  Glenn, along with his brother, Tivarious Henderson, and two others went to Shelricka's apartment to "chill."  Once there, Glenn drove one of Shelricka's friends to the store in her car, since she had been drinking and he had not.

While Glenn was at the store, Kevin Bruster showed up at the apartment uninvited, despite having been put on trespass notice less than twenty-four hours before due to an incident between him and his ex-girlfriend, Gloria Duncan, Shelricka's mother.  Kevin was heavily intoxicated and forced his way into the apartment, yelling that he was going to kill Gloria.  When Shelricka attempted to stop him, he hit her, and Tivarious intervened.  Kevin then pulled a razor blade from his mouth, cutting Tivarious across the eye.  Tivarious and another friend managed to get Kevin outside, where he ran off.

Kevin went to another apartment in the complex where his nephew, Elfonso Bruster, was visiting family, and he begged Elfonso to help him retrieve his moped, which he had left at Shelricka's apartment the day before.  Around the same time, Glenn returned to Spring Grove with a bag from the convenience store, and Kiana waived him over to her apartment to warn him of what had happened in his absence. Glenn went to Kiana's apartment to get change back from money he had given her to buy a pizza, and he set his bag down there.  Upon returning to the complex, Glenn was approached by the police who reported to the scene as a result of Kevin's altercation with Tivarious.  The police officers asked Glenn whether he knew anything about the altercation, and he told them he knew nothing because he had been at the store.  At that time, Tivarious got into Glenn's car and parked it in front of Kiana's apartment.

While Glenn was speaking with the officers, he noticed Kevin and Elfonso lurking in the shadows of a nearby apartment building.  After speaking with the

police, Glenn retrieved his belongings from Kiana's apartment to depart from Spring Grove.  While walking to his car, Kevin and Elfonso abruptly approached him, blocking his way.  Glenn believes Elfonso asked him, "who jumped my m----r f-----g uncle?" to which he replied that he did not know because he had gone to the store.[1]  Glenn then recalls Kevin saying, "Alf, let's do what we said -- what you just said we came to do. You said we gonna get one of these n-----s in this white Lincoln right here, we gonna get all these n-----s right here, so let's do what we came to do."  Kevin then punched Glenn in the throat/neck, splashing the alcoholic drink he was carrying into his eyes.

The attack caused Glenn to stumble back and knocked him off balance.  As he wiped the alcohol from his eyes and his vision cleared, Glenn saw Elfonso pulling something from his waistband and heard a female yell "GUN!"  There was testimony by female witnesses nearby that they did not see a gun, but others present at the scene testified Elfonso had a gun, that he was known to carry a gun, and that his movements near his waistband indicated he was pulling a gun.  At that moment, Glenn pulled out a handgun concealed in his pants pocket and fired three shots in Elfonso's direction.  The shots rendered Elfonso paralyzed from the waist down.  After the shooting, Glenn got in the car, pulled up to a nearby officer, and told him that he had just been in an altercation with two guys and that Elfonso was bleeding and needed help.  There is conflicting testimony as to whether Glenn told the officer he was the shooter.

Glenn was charged with attempted murder and possession of a weapon during a violent crime.  He filed a pretrial motion for statutory immunity under the Protection of Persons and Property Act, which the circuit court denied.  Ruling from the bench, the court denied Glenn immunity from prosecution, finding that "the immunity argument fails solely on the issue of whether or not he had a right to be there."  The court reasoned that Glenn did not have a right to be where he was at the time of the incident because he was on the apartment complex's no trespass list, and therefore, was a trespasser.  According to testimony the State presented at the immunity hearing, Glenn had been placed on trespass notice, recorded on a list maintained by the Greenville County Sheriff's Office, for loitering on the property three years ago after his family had been evicted.  Glenn's grandmother, who resided at the complex at the time of the incident, had no knowledge of this and disputed

---

[1] Although Glenn was apprised by the police that there had been an altercation in his absence that evening, it is unclear whether he knew that Kevin cut his brother with a razor blade.  However, it is uncontroverted that Glenn did not know Kevin prior to the incident in the parking lot.

whether he was ever on such a list. However, the court found Glenn was not involved in any unlawful activity, notwithstanding the fact he was carrying an illegal weapon at the time of the shooting, and that his possession of the weapon was not the proximate cause of the incident. From the judge's oral ruling, it does not appear that he made any findings of fact or conclusions of law with respect to the elements of self-defense. Rather, during the immunity hearing, he steered counsel away from arguing the elements of self-defense and focused only on whether Glenn had the right to be there.

Following the circuit court's denial of immunity, Glenn was tried by a jury, convicted of assault and battery of a high and aggravated nature and possession of a weapon during a violent crime, and sentenced to twelve years and five years' imprisonment, respectively, to be served concurrently. Glenn appealed his convictions to the court of appeals, which affirmed the circuit court's order in an unpublished per curiam opinion, finding Glenn was not in a place where he had a right to be because he was a trespasser and declining to address other issues on appeal as unpreserved. We granted Glenn's petition for a writ of certiorari to review the decision.

## ISSUES PRESENTED

1. In light of this Court's decision in *State v. Scott*,[2] did the court of appeals err in affirming the circuit court's denial of immunity under the Act, when Glenn proved by a preponderance of the evidence all of the elements of the common law of self-defense?

2. Did the court of appeals err in affirming the circuit court's denial of immunity under the Act solely on the determination that Glenn was not in a place where he had a "right to be"?[3]

---

[2] *State v. Scott*, 424 S.C. 463, 819 S.E.2d 116 (2018).

[3] In his petition for a writ of certiorari, Glenn rejects the circuit court's determination that he was a trespasser as the basis for finding he was not in a place where he had a right to be. Because our analysis of the circuit court's legal error is dispositive of Petitioner's case, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (finding an appellate court need not address remaining issues on appeal when a decision of a prior issue is dispositive).

## STANDARD OF REVIEW

A defendant's entitlement to immunity from prosecution under the Protection of Persons and Property Act must be decided pretrial using a preponderance of the evidence standard. *State v. Duncan*, 392 S.C. 404, 410-11, 709 S.E.2d 662, 665 (2011). This Court reviews an immunity determination for abuse of discretion. *State v. Curry*, 406 S.C. 364, 370, 752 S.E.2d 263, 266 (2013). A trial court abuses its discretion when its ruling is based on an error of law, or when grounded in factual conclusions, is without evidentiary support. *State v. Jones*, 416 S.C. 283, 290, 786 S.E.2d 132, 136 (2016).

## LAW

There are four elements a defendant must establish to justify the use of deadly force under the common law of self-defense:

> First, the defendant must be without fault in bringing on the difficulty. Second, the defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger. Third, if his defense is based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have entertained the same belief. If the defendant actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life. Fourth, the defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance.

*State v. Dickey*, 394 S.C. 491, 499, 716 S.E.2d 97, 101 (2011). *See also Curry*, 406 S.C. at 371 n. 4, 752 S.E.2d at 266 n. 4 (citing *State v. Davis*, 282 S.C. 45, 46, 317 S.E.2d 452, 453 (1984)).

In 2006, the South Carolina General Assembly promulgated the Protection of Persons and Property Act to provide immunity from prosecution to persons acting in defense of themselves or others if they are found to be justified in using deadly force. S.C. Code Ann. § 16-11-450 (2015); *Curry*, 406 S.C. at 371, 752 S.E.2d at 266. The Act codified the common law Castle Doctrine and extended its reach. S.C. Code Ann. § 16-11-420(A) (2015) ("It is the intent of the General Assembly to

codify the common law Castle Doctrine which recognizes that a person's home is his castle and to extend the doctrine to include an occupied vehicle and the person's place of business"). "Under the Castle Doctrine, '[o]ne attacked, without fault on his part, on his own premises, has the right, in establishing his plea of self-defense, to claim immunity from the law of retreat, which ordinarily is an essential element of that defense.'" *Jones*, 416 S.C. at 291, 786 S.E.2d at 136 (citing *State v. Gordon*, 128 S.C. 422, 425, 122 S.E. 501, 502 (1924)). The Legislature adopted the Act based on its finding that "no person or victim of crime should be required to surrender his personal safety to a criminal, nor should a person or victim be required to needlessly retreat in the face of intrusion or attack." S.C. Code Ann. § 16-11-420(E).

Specifically, the immunity section of the Act provides:

A person who uses deadly force as permitted by the provisions of this article *or another applicable provision of law* is justified in using deadly force and is immune from criminal prosecution and civil action for the use of deadly force, unless the person against whom deadly force was used is a law enforcement officer acting in the performance of his official duties and he identifies himself in accordance with applicable law or the person using deadly force knows or reasonably should have known that the person is a law enforcement officer.

S.C. Code Ann. § 16-11-450(A) (2015) (emphasis added). We have acknowledged that "another applicable provision of law" includes the common law of self-defense. *State v. Scott*, 424 S.C. 463, 473, 819 S.E.2d 116, 120 (2018). *See also Jones*, 416 S.C. at 300 n.8, 786 S.E.2d at 141 n.8. This means a defendant may seek immunity from prosecution under the Act by "demonstrating the elements of self-defense to the satisfaction of the trial court by the preponderance of the evidence." *Curry*, 406 S.C. at 372, 752 S.E.2d at 267. For immunity claims under this theory, we stated in *Curry* that, "a valid case of self-defense must exist, and the trial court must necessarily consider the elements of self-defense in determining a defendant's entitlement to the Act's immunity." *Id*. at 371, 752 S.E.2d at 266. Accordingly, a trial court should first consider whether the defendant has proved the elements of self-defense by a preponderance of the evidence. If the defendant has failed to meet the elements of reasonable fear or the duty to retreat, the court should then determine whether section 16-11-440(A) or (C) is applicable.

Section 16-11-440(A) may, under appropriate facts, replace the reasonable fear element of self-defense by providing a presumption that the person's fear was reasonable under certain circumstances:

A person is presumed to have a reasonable fear of imminent peril of death or great bodily injury to himself or another person when using deadly force that is intended or likely to cause death or great bodily injury to another person if the person:

(1) against whom the deadly force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcibly entered a dwelling, residence, or occupied vehicle, or if he removes or is attempting to remove another person against his will from the dwelling, residence, or occupied vehicle; and

(2) who uses deadly force knows or has reason to believe that an unlawful and forcible entry or unlawful and forcible act is occurring or has occurred.

S.C. Code Ann. § 16-11-440(A) (2015). The presumption of subsection (A) does not apply, however, "if the victim has an equal right to be in the dwelling or residence." *Jones*, 416 S.C. at 292, 786 S.E.2d at 137 (citing *Curry*, 406 S.C. at 370, 752 S.E.2d at 266).

Similarly, in cases where the defendant has not proved the duty to retreat element by a preponderance of the evidence, the court should then consider whether section 16-11-440(C) is applicable because that provision was enacted to extend the protections of the Castle Doctrine to "'[ ]other place[s] where he has a right to be.'" *Scott*, 424 S.C. at 475, 819 S.E.2d at 121 (quoting S.C. Code Ann. § 16-11-440(C)). The section provides:

A person who is not engaged in an unlawful activity and *who is attacked in another place where he has a right to be*, including, but not limited to, his place of business, has *no duty to retreat* and has the right to stand his ground and meet force with force, including deadly force, if he reasonably believes it is necessary to prevent death or great bodily injury to himself or another person or to prevent the commission of a violent crime as defined in Section 16-1-60.

S.C. Code Ann. § 16-11-440(C) (2015) (emphasis added). Where the section is applicable, it replaces the duty to retreat element required to establish self-defense. *Curry*, 406 S.C. at 371 n. 4, 752 S.E.2d at 266 n. 4.

Generally, a defendant will be defaulted into satisfying subsection (C) when the Castle Doctrine does not apply or he cannot otherwise show he was excused from the duty to retreat. *Jones*, 416 S.C. at 292, 786 S.E.2d at 137 (defaulting the defendant into seeking immunity under subsection (C) where she and her assailant had an equal right to be in the apartment because they both resided there). *State v. Fuller*, 297 S.C. 440, 444, 337 S.E.2d 328, 331 (1989) (holding under the common law of self-defense that an individual has no duty to retreat if by doing so he would increase his danger of being killed or suffering serious bodily injury). In determining whether a defendant satisfies section 16-11-440(C), the circuit court must analyze whether, at the time of the incident, he was engaged in an unlawful activity and was attacked in another place where he had a right to be. S.C. Code Ann. § 16-11-440(C).

We recognized in *Jones* the irrationality of foreclosing immunity based on the location of the incident provoking the use of self-defense. 416 S.C. at 297, 786 S.E.2d at 139 ("[W]e find the Legislature intended the protection of subsection (C) to apply to incidents, provided the other requirements are met, without a geographical restriction."). Similarly, analyzing a defendant's "right to be" in a place where he is attacked under section 16-11-440(C) without considering proximate cause or a causal connection to the incident leaves an innocent person's ability to seek the Act's protection up to happenstance, which we also do not believe was the intent of the Legislature. Such analysis in this context is supported by our longstanding self-defense precedent predating the Act. *See State v. Leeks*, 114 S.C. 257, 103 S.E. 549, 551 (1920) (holding that a defendant's presence at and participation in an unlawful gambling game "did not destroy the right to self-defense" because "[t]he causal connection between the unlawful act of gambling and the encounter . . . is too remote."); *State v. Gunter*, 126 S.C. 375, 376, 119 S.E. 844, 844 (1923) (refusing to hold "that a man, under the circumstances stated, is deprived of the right to self-defense, unless . . . his presence there was reasonably calculated to provoke a difficulty with the deceased . . . ."). Indeed, to bar a victim of crime from claiming immunity based on a hyper-technical reading of the statute would lead to absurd results when his presence in the place he was attacked had no relation to the incident itself. *Miller v. Aiken*, 346 S.C. 303, 307, 613 S.E.2d 364, 366 (2005) ("However plain the ordinary meaning of words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature or would defeat the plain legislative intention."). This absurdity is readily illustrated through this example: A person peaceably jogging through a public municipal park at 8:59 p.m. would be entitled to defend herself from an attacker under the protection of the Act, but should the clock turn to 9:00 p.m., at which time the park "closes" under the

municipal code, when she is attacked, then she is categorically barred from immunity under the Act due to her *technically* not having the "right to be" there. Such an absurd result would undoubtedly thwart the Legislature's intended objective to protect victims of crime.

In addition, we find a proximate cause analysis must also be applied to the unlawful activity element of subsection (C).[4] *See State v. Burriss*, 334 S.C. 256, 262, 513 S.E.2d 104, 108 (1999) ("[A] person can be acting lawfully, even if he is in unlawful possession of a weapon, if he was entitled to arm himself in self-defense at the time of the shooting."); *State v. Goodson*, 312 S.C. 278, 280 n.1, 440 S.E.2d 370, 372 n.1 (1994) ("[T]he burden rests upon the State to prove beyond a reasonable doubt that the unlawful act in which the accused was engaged was at least the proximate cause of the homicide."). We now apply the foregoing legal principles to the facts of this case.

## ANALYSIS

Here, Glenn argues that under this Court's holding in *State v. Scott*, he was entitled to immunity because he proved by a preponderance of the evidence all of the elements of the common law of self-defense. Specifically, he contends the holding that "[i]t was clearly the Legislature's intent that if a person seeking immunity under subsection 16-11-450(A) could prove the elements of self-defense in an immunity proceeding, immunity must be granted" establishes that a person's proof of the elements of self-defense by a preponderance of the evidence provides a standalone basis for immunity such that none of section 16-11-440 must be proven. *Scott*, 424 S.C. at 473, 819 S.E.2d at 120-21.

There, Scott's daughter and her friends called Scott's fiancé in the middle of the night and explained they were being chased by other girls from a party. *Id.* at 466-67, 819 S.E.2d at 117. The fiancé instructed them to drive to Scott's home and park in the driveway. After doing so, the ensuing events became less clear. Scott, his fiancé, and the children all testified they heard a gunshot as they were entering the house. The fiancé called 911, and Scott retrieved a gun and ran toward his front

---

[4] Here, the circuit court properly applied a proximate cause analysis to examine whether Glenn was engaged in unlawful activity at the time of the incident. In its oral ruling, the court found Glenn was not engaged in any unlawful activity—despite the fact he was carrying an illegal weapon at the time of the shooting—because his possession was not the proximate cause of the incident.

door.  At this point, the vehicle carrying the other girls drove past the front of the house, turned around so that the driver's side of the vehicle was facing the house, turned off the headlights, rolled down the windows, and started to drive by Scott's house as one of the car's occupants opened fire.  *Id*. at 467, 819 S.E.2d at 118.  According to Scott, he fired a warning shot in the air, but when the car approached the house, he shot two or three more times before retreating inside.  *Id*. at 468, 819 S.E.2d at 118.  At that moment, another vehicle was located behind the car approaching Scott's home, and his gunshots killed the driver of that vehicle, who based on the evidence was not involved in the chase but instead appeared to be an innocent onlooker caught in the crossfire. *Id*.

Based on these facts, we found subsection 16-11-440(A) did not apply to Scott because the assailant was not "in the process of unlawfully or forcefully entering a dwelling or residence." *Id*. at 474, 819 S.E.2d at 121.  Scott also "did not need a presumption of reasonable fear because he proved to the circuit court's satisfaction as a matter of fact that his fear was reasonable." *Id*.  In addition, although Scott satisfied the requirements of subsection 16-11-440(C) to replace the duty to retreat element of self-defense, it was not essential to the circuit court's finding of immunity because he was in the curtilage of his home when he used deadly force against his assailant and was free to stand his ground under the Castle Doctrine. *Id*. at 474-75, 819 S.E.2d at 121; *State v. Grantham*, 224 S.C. 41, 45, 77 S.E.2d 291, 293 (1953) (holding that a person "in his home lawfully occupied by him and . . . without fault in bringing on the difficulty was not bound to retreat in order to invoke the benefit of the doctrine of self-defense, but could stand his ground and repel the attack with as much force as was reasonably necessary.").  Accordingly, because Scott established a prima facie case of self-defense, the trial court did not need to apply section 16-11-440 and instead granted him immunity based on satisfying the "another applicable provision of law" portion of section 16-11-450.

However, the traditional Castle Doctrine does not apply to Glenn because he was not attacked on his own premises but instead was attacked in the common area of the Spring Grove apartment complex.  Subsection 16-11-440(A) also does not apply to Glenn for the same reason as in *Scott*—that the assailant was not "in the process of unlawfully or forcefully entering a dwelling or residence."  Rather, to obtain immunity, Glenn must satisfy all four elements of self-defense by a preponderance of the evidence, or three of the elements plus subsection 16-11-440(C) if applicable.

Glenn asks us to overlook the circuit court's failure to address the self-defense elements with precision and to "glean from [the court's] order the necessary findings of fact to support the conclusion that [Glenn] established the four elements of self-defense" and grant him immunity. *Scott*, 424 S.C. at 469, 819 S.E.2d at 118.  This we decline to do.

In determining a defendant's entitlement to immunity under the Act, the circuit court must necessarily consider the elements of self-defense. *Curry*, 406 S.C. at 371, 752 S.E.2d at 266.  While we understand that written orders are not always practical given the timing of the immunity hearing, the circuit court, in announcing its ruling, should at least make specific findings on the elements on the record. *See State v. Cervantes-Pavon*, 426 S.C. 442, 452 n. 4, 827 S.E.2d 564, 569 n.4 (2019) ("While the Act does not require a written order upon an immunity determination, specific findings of fact and conclusions of law are critical to reviewing courts, particularly given the gravity of the circumstances these cases necessarily involve.").

Here, in its oral ruling from the bench, the circuit court did not address the elements of self-defense, thereby making appellate review difficult.  Instead, the court went straight to consideration of subsection 16-11-440(C).  This constituted reversible legal error.  Glenn argues that the court's denial of immunity *solely* on that subsection implies it found the elements of self-defense were satisfied.  The circuit court is the fact-finder in immunity hearings, and we are reluctant to infer findings of fact which do not appear in the record.  Therefore, we reverse and remand the case for a new immunity hearing. *See Cervantes-Pavon*, 426 S.C. at 452, 827 S.E.2d at 569 (noting the trial court's immunity ruling must be based solely on the evidence presented at the pretrial hearing).  On remand, the circuit court should analyze all of the elements of self-defense and should also determine whether Glenn's alleged trespass was proximately related to the shooting.

## CONCLUSION

For the foregoing reasons, we conclude the circuit court erred in failing to consider the elements of the common law of self-defense and denying Glenn immunity *solely* on the basis that he did not have a right to be where he was when he was attacked.  We also hereafter require circuit courts during pretrial *Duncan* hearings to conduct a proximate cause analysis before determining whether a person seeking immunity under the Act satisfies subsection 16-11-440(C), if applicable. Accordingly, we **REVERSE** the decision of the court of appeals and **REMAND** to the circuit court for a new immunity hearing.

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**