752 S.E.2d 263

**The STATE, Respondent,**

v.

**James J. CURRY, Jr., Appellant.**

**Appellate Case No. 2010–153826.**

**No. 27335.**

Supreme Court of South Carolina.

Heard Sept. 19, 2012.

Decided Dec. 4, 2013.

Appellate Defender LaNelle Cantey DuRant, of Columbia, for appellant.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Julie K. Keeney, all of Columbia, and Solicitor Douglas A. Barfield, Jr., of Lancaster, for respondent.

Justice KITTREDGE.

This is a direct appeal in a criminal case. Appellant James J. Curry, Jr., was convicted and sentenced for the offenses of voluntary manslaughter and possession of a weapon during the commission of a violent crime. We affirm.

## I.

## FACTS/PROCEDURAL HISTORY

On New Year's Eve 2008, Appellant and his fiancée traveled from Rock Hill, South Carolina, to Appellant's hometown of Lancaster, South Carolina, to visit friends and family. Appellant traveled with a .22 caliber pistol. Once they arrived in Lancaster, Appellant and his fiancée visited his cousin Devion Collins and his fiancée at their home. After socializing and drinking alcohol for several hours, Appellant invited Collins and his fiancée to go to Appellant's mother's apartment.

The group then drove to the apartment. Appellant and Collins dropped off their fiancées, picked up a friend, and went to the store for more alcohol and cigarettes. Upon returning to the apartment, Appellant testified he retrieved his pistol from the trunk, went upstairs, and placed the pistol and bullets under his mother's mattress.[1]

---

1. There is a conflict in the evidence as to the point in time Appellant retrieved his gun from under the mattress. Resolving this evidentiary

Later in the evening, after some disturbances in the complex parking lot, Appellant's fiancée left the complex, but Appellant remained in the apartment with Collins and others. Thereafter, Appellant and Collins got into an argument, apparently over Appellant speaking to Collins' fiancée. A brief scuffle ensued, and the two were quickly separated by bystanders. By all accounts, Collins was considerably bigger and stronger than Appellant.

Shortly thereafter, the two men began fighting again. Once again, the two men were separated. According to one witness, Jermaine Harris, there was no blood or injury, and the fight appeared to be over. Harris then led Collins to the kitchen to separate the two combatants.

At this point, the testimony of Appellant and the State's witnesses varies substantially. Several of the State's witnesses testified that after the second altercation ended, Appellant ran upstairs, came back downstairs, faced the kitchen, and began shooting at Collins, whose back was to Appellant. Appellant, on the other hand, testified he had retrieved and loaded the gun earlier in the night, and had placed it in his pocket in anticipation of firing the weapon at midnight to celebrate the New Year. Appellant testified he pulled the gun from his pocket because he believed Collins was lunging toward him. Appellant shot Collins six times in the back, killing him. It is undisputed that Collins was unarmed.

Appellant was charged with murder and possession of a firearm during the commission of a violent crime. Appellant confessed to killing Collins, although he told investigating officers that he "blacked out" during the shooting. At the close of the State's evidence, defense counsel moved for a directed verdict of acquittal pursuant to the Protection of Persons and Property Act (Act), which purports to codify the common law Castle Doctrine. *See* S.C.Code §§ 16–11–410, 16–11440(C), and 16–11–450 (Supp.2011). The trial court denied the motion. Thereafter, the trial court instructed the jury on murder, voluntary manslaughter, and self-defense. Appellant's counsel further challenged the trial court's self-defense instructions. The jury returned a verdict of guilty on

conflict has no bearing on resolving the challenge asserted by Appellant on appeal.

the offense of voluntary manslaughter and the weapons charge. Appellant was sentenced to eighteen years' imprisonment.

## II.

## LAW/ANALYSIS

### A.

### Protection of Persons and Property Act

■ When applicable, the Act provides immunity from prosecution.[2] Claiming self-defense, Appellant sought to invoke section 16–11–440(C) of the Act at the directed verdict stage. The trial court denied the motion, finding that Appellant failed to establish his entitlement to immunity under section 16–11–440(C). Because there is evidence to support the decision of the trial court, we affirm.

■■ Section 16–11–440(A), the main thrust of the Act, provides a presumption of reasonable fear of imminent peril of death or great bodily injury to a person who uses deadly force if he is attacked by or attempting to remove another from a dwelling, residence, or occupied vehicle. However, the presumption of subsection (A) does not apply if the victim has an equal right to be in the dwelling or residence. S.C.Code § 16–11–440(B). Because Collins was a social guest and rightfully in the apartment, subsection (A) is inapplicable to Appellant, and he is therefore defaulted into subsection (C), which deals with the use of force by one who is attacked in another place where he has a right to be.

■ A claim of immunity under the Act requires a pretrial determination using a preponderance of the evidence standard, which this court reviews under an abuse of discretion standard of review. *State v. Duncan*, 392 S.C. 404, 709 S.E.2d 662 (2011).[3]

---

2. That provision states: "A person who uses deadly force as permitted by the provisions of [the Act] ... is justified in using deadly force and is immune from criminal prosecution and civil action for the use of deadly force...." S.C.Code § 16–11–450(A).

3. Appellant moved for immunity under the Act at the directed verdict stage, calling it a "slightly unusual" procedure. We note that our

In *Duncan*, we set forth the pretrial procedure, burden of proof and appellate standard of review under the Act. Because Appellant misapprehends the reach of the Act, we take this opportunity to interpret what we believe to be the legislative intent regarding a trial court's authority to weigh the underlying claim of self-defense in determining an accused's entitlement to immunity.

Section 16–11–450 provides immunity from prosecution *if* a person is found to be justified in using deadly force under the Act. Section 16–11–440(C), the pertinent "force" section, states:

> A person who is not engaged in an unlawful activity and who is attacked in another place where he has a right to be, including, but not limited to, his place of business, has no duty to retreat and has the right to stand his ground and meet force with force, including deadly force, if he reasonably believes it is necessary to prevent death or great bodily injury to himself or another person. . . .

Appellant appears to argue the Act should be construed to require a trial court to accept the accused's version of the underlying facts. As a result, the trial court could only determine if the accused is "not engaged in an unlawful activity" and is in a "place he has a right to be." We find that the General Assembly did not intend such an application. Consistent with the Castle Doctrine and the text of the Act, a valid case of self-defense must exist, and the trial court must necessarily consider the elements of self-defense in determining a defendant's entitlement to the Act's immunity. This includes all elements of self-defense, save the duty to retreat.[4]

decision in *Duncan* was published after this case was tried. In fairness to the parties and the trial court, the Act is silent on the procedure to follow when an accused seeks immunity. While *Duncan* interprets the Act to require a pretrial determination by the trial court, because Appellant and the trial court here did not have the benefit of *Duncan*, we elect to treat the matter as preserved through the directed verdict motion. *See also State v. Isaac*, 405 S.C. 177, 185, 747 S.E.2d 677, 681 (2013) (holding the denial of a request for immunity under the Act is interlocutory and therefore is not immediately appealable).

4. There are four elements required by law to establish a case of self-defense:

■ As the General Assembly stated its intent to codify the common law Castle Doctrine, we believe it appropriate to consider case law in the area. In *State v. Grantham*, we stated that "the [Castle Doctrine] rule is predicated on the absence of aggression or fault on [the defendant's] part in bringing on the difficulty; the doctrine is for defensive, and not offensive purposes." 224 S.C. 41, 45, 77 S.E.2d 291, 292 (1953). While the Act may be considered "offensive" in the sense that the immunity operates as a bar to prosecution, such immunity is predicated on an accused demonstrating the elements of self-defense to the satisfaction of the trial court by the preponderance of the evidence.

■ Given the facts as presented above, we conclude there is evidence to support the trial court's denial of immunity under the Act. Appellant's claim of self-defense presents a quintessential jury question, which, most assuredly, is not a situation warranting immunity from prosecution. Accordingly, we find the case was properly submitted to the jury, with the claim of self-defense being fully presented, and the State having the burden to disprove at least one element of self-defense beyond a reasonable doubt.

## B.

### Jury Instruction

Appellant next contends the trial court erred in charging the jury on both the provisions of the Act and the standard

---

First, the defendant must be without fault in bringing on the difficulty. Second, the defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger. Third, if his defense is based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have entertained the same belief. If the defendant actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life. Fourth, the defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance.

*State v. Davis*, 282 S.C. 45, 46, 317 S.E.2d 452, 453 (1984). It is the fourth element—the duty to retreat—that is excused under the Act and the Castle Doctrine.

self-defense charge because they are inherently inconsistent and confusing to the jury. We reject Appellant's claim of prejudicial error.

"In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial." *State v. Brandt,* 393 S.C. 526, 549, 713 S.E.2d 591, 603 (2011) (citation omitted). "Generally, an alleged error in a portion of a charge must be considered in light of the whole charge, and must be prejudicial to the appellant to warrant a new trial." *Priest v. Scott,* 266 S.C. 321, 324, 223 S.E.2d 36, 38 (1976).

The jury was instructed on section 16–11–440(C) of the Act, specifically:

I tell you that if the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, even to the extent of using deadly force or great bodily injury if it was necessary to prevent death or great bodily injury to himself or others.

The trial court further charged the jury on the elements of self-defense, including the requirement that "the defendant had no other probable way to avoid the danger or death or serious bodily injury than to act as the defendant did in this particular instance."

Appellant claims the charge is a "purposeful ambiguity," which confused the jury. The charge under the Act was indeed error, but one that inured to Appellant's benefit. Specifically, the trial court had denied Appellant immunity, and section 16–11–440(C) should not have been charged to the jury. The full reach of the Act and whether the statutory provisions in the Act extend beyond the common law Castle Doctrine are questions for another day. Yet, in this context, the error in the jury charge, and any resulting ambiguity, caused no prejudice to Appellant. Under the Castle Doctrine, one is not required to retreat from *his dwelling place. See State v. Gordon,* 128 S.C. 422, 425, 122 S.E. 501, 502 (1924) ("One attacked, without fault on his part, *on his own premises,* has the right, in establishing his plea of self-defense, to claim immunity from the law of retreat, which is ordinarily an essential element of that defense." (emphasis added)).

 Under the Castle Doctrine, the absence of a duty to retreat does not extend to a visitor or social guest in the home of another unless "the attacker is an intruder." *See State v. Brown*, 321 S.C. 184, 467 S.E.2d 922 (1996) (applying the common law and holding that "a lawful guest attacked in the owner's home has no duty to retreat where the attacker is an intruder" but "where the attacker is the homeowner, a lawful guest has a duty to retreat"); *see also Gilchrist v. State*, 364 S.C. 173, 612 S.E.2d 702 (2005) (overruling precedent that elevated a "club" to the possessory status of a home or place of business with regards to the absence of a duty to retreat and stating that "this expansion of the immunity-from-retreat doctrine is not good public policy, especially in the contemporary context of private clubs"). We agree with other courts that have found such a broad extension would encourage the use of deadly force. *See, e.g., State v. James*, 867 So.2d 414, 417 (Fla.Dist.Ct.App.2003) (stating an overly broad extension of the castle doctrine would vitiate the retreat rule.... "[G]ranting castle doctrine protection to a social guest or visitor would necessarily grant the guest or visitor innumerable castles wherever he or she is authorized to visit. That, in turn, would extend the privilege of non-retreat and encourage the use of deadly force.").

## III.

## CONCLUSION

Because the trial court did not abuse its discretion in denying Appellant immunity under the Act and Appellant was not prejudiced by the section 16–11–440(C) jury instruction, Appellant's convictions and sentence are affirmed.[5]

**AFFIRMED.**

TOAL, C.J., BEATTY and HEARN, JJ., concur.

PLEICONES, J., concurring in part and dissenting in part in a separate opinion.

---

5. Appellant additionally claims error in the trial court's failure to grant a new trial pursuant to the thirteenth juror doctrine. The assignment of error is manifestly without merit, and we affirm pursuant to Rule 220(b)(1), SCACR. *See State v. Prince*, 316 S.C. 57, 64, 447 S.E.2d 177, 181 (1993) ("Where there is competent evidence to sustain the jury's verdict, the judge may not substitute his judgment for that of the jury.").

Justice PLEICONES.

I concur in part and dissent in part. I agree with the majority that the Protection of Persons and Property Act (Act) creates a statutory immunity but leaves intact the common law defenses of habitation, of others, and of self-defense. While a criminal defendant is entitled to have the issue of statutory immunity decided prior to trial by a judge, once the case goes to trial a defendant's right to a jury charge on these defenses is determined under common law principles. I therefore agree that appellant was not entitled to a jury charge on the presumption created by S.C.Code Ann. § 16–11–440(C) (Supp.2012). However, since that charge was given, and since it was hopelessly confusing when viewed in light of the charge on common law self-defense, and since the trial judge, acting without benefit of our decision in *State v. Duncan*, 392 S.C. 404, 709 S.E.2d 662 (2011), denied appellant's immunity request under an incorrect standard,[6] I would reverse his convictions and remand for a new trial.

---

6. The trial judge held that appellant was not entitled to immunity using the directed verdict standard of "any evidence" to deny the request rather than asking whether appellant had proven immunity by a preponderance of the evidence.