# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Brandon Rashad Marshall, Jr., Appellant.

Appellate Case No. 2016-000870

_____

Appeal From Charleston County
R. Markley Dennis, Jr., Circuit Court Judge

_____

Opinion No. 5674
Submitted November 1, 2018 – Filed August 7, 2019

_____

**AFFIRMED**

_____

Appellate Defender Susan B. Hackett, of Columbia, for
Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, and
Assistant Attorney General Alphonso Simon, Jr., all of
Columbia; and Solicitor Scarlett Anne Wilson, of
Charleston, all for Respondent.

_____

**WILLIAMS, J.:** In this criminal appeal, Brandon Rashad Marshall, Jr. appeals
his convictions for murder and possession of a firearm during the commission of a
violent crime. On appeal, Marshall argues the circuit court erred in denying him
immunity under the Protection of Persons and Property Act (the Act), S.C. Code
Ann. §§ 16-11-410 to -450 (2015). We affirm.

## FACTS/PROCEDURAL HISTORY

Marshall was indicted for murder and possession of a weapon during the commission of a violent crime after he shot and killed Anthony Williams (Victim) on May 22, 2014. Prior to trial, Marshall sought immunity from prosecution pursuant to the Act, and on April 4, 2016, the circuit court conducted an immunity hearing pursuant to *State v. Duncan*, 392 S.C. 404, 709 S.E.2d 662 (2011). At the immunity hearing, the circuit court admitted the video recording of Detective Burckhardt interviewing Marshall on the night of the incident (the recorded interview).

During the immunity hearing, Marshall testified he met Victim approximately three months prior to the shooting, and the two began a sexual relationship about one month later. At the time of the incident, Victim was also in a relationship with Ashley Butler. Victim and Butler resided together, but Victim was not on Butler's lease and was on trespass notice for Butler's apartment (the apartment). On the night of the shooting, Marshall was invited to visit Butler and Victim at the apartment. Marshall stated he took his gun into the apartment because he argued with Butler's neighbor before, and he previously witnessed the neighbor severely assault another man. Marshall testified that while he was at the apartment, Victim and Butler got into an argument, so he left the room. Marshall stated he returned to the room when he heard Butler yelling, "Get off of me, you are always putting your hands on me." He also indicated he heard Butler say she could not breathe. Marshall stated he saw Victim on top of Butler with one hand around her neck and the other hand positioned to strike her face. Marshall testified he grabbed his gun off the table, inserted the clip, and told Victim he needed to stop and needed to leave. Victim left the apartment, and Marshall followed him.

Marshall stated he returned to the back door to gather his belongings, but Butler did not want to open the back door, so she put his bag on the front porch. Marshall testified that after he put his bag, but not his gun, in his car, he saw Victim go back to the apartment, and he thought Victim was trying to kick in the door. Marshall stated he approached Victim in an attempt to calm Victim down and encourage him to leave because he feared Victim would get in trouble for violating the trespass notice. Marshall also testified he was afraid Victim would attempt to kill Butler if Victim was successful in kicking in the door. Marshall stated Victim shoved him to the ground, and Marshall was fairly certain his glasses fell off. Marshall testified he approached Victim again and tried to grab Victim's wrist, but Victim pulled away and resumed kicking and punching the door. When Marshall attempted to grab Victim's hand, Victim turned around and shoved him twice,

knocking him into a tree. Marshall indicated he had a hard time getting up, and when he finally got up, Victim pushed him against the tree again, causing Marshall to fall. Marshall indicated Victim got on top of him and hit his face at least once while Marshall repeatedly told Victim to get off of him. According to Marshall, he was not physically able to get Victim off of him because he was overweight and suffered from prior injuries stemming from automobile accidents. Marshall testified he was pretty sure he was on the ground when he turned over, threw back his hand, and fired the gun until it stopped firing. Marshall then ran to his car and drove away, but he quickly returned to the scene after police arrived. Marshall testified he believed Victim was trying to kill him and Butler and that Victim would have killed him had he not defended himself. According to Marshall, he did not make a definite decision to shoot Victim.

Marshall acknowledged his testimony during the immunity hearing differed from what he told Detective Burckhardt in the recorded interview, but he indicated his memory was much better at the immunity hearing than it was "immediately after the traumatizing incident." The recorded interview differed from the immunity hearing testimony as to the distance between Marshall and Victim when Marshall fired the gun and as to whether Marshall (1) had his glasses on when he shot Victim, (2) was standing or lying on the ground when he shot Victim, (3) put the clip in the gun during Victim and Butler's argument or after Victim shoved him, and (4) fired the gun continuously or stopped firing but resumed firing after Victim tried to get back up.

At the immunity hearing, Butler's testimony differed from Marshall's account of the events. Butler testified that on the night of the incident, an argument ensued between her and Victim. Butler stated she spit at Victim, and Victim grabbed her and held her down on the couch. Butler testified that although she could not breathe when Victim held her down on the couch, she believed it was because of the position she was in not because Victim was choking her. Butler averred Victim did not choke her. She further testified Victim did not hit her, she never told Victim to stop hitting her, and she never believed Victim was going to kill her or seriously hurt her. She stated that throughout their relationship, Victim never hit or assaulted her.

According to Butler, Victim left when Marshall grabbed Victim while he was on top of her on the couch and told Victim to leave. After Marshall and Victim left, Butler locked the back door. She testified Marshall knocked on the back door to get his things, she put them on the front porch, and she asked him to leave. Butler indicated Victim then knocked on the back door to get some clothes. Butler

testified Victim knocked louder than Marshall, but she did not think he was trying to kick in the door, and she did not fear he was going to hurt her. Butler stated she did not let Victim in, but she yelled through the door that she would get Victim's clothes from upstairs. Butler testified she did not let Victim in because she feared she would get kicked out of her apartment as a result of the trespass notice, not because she was afraid. As she was coming down the stairs with Victim's clothes, Butler stated she heard gunshots. A photograph admitted into evidence by the State showed that the police found Victim's clothes near the front door.

Butler's neighbor also testified at the immunity hearing. She stated she awoke to the sound of gunshots, and then she heard a male voice yell "you are messing with the wrong [person]." She testified she heard no pause in the gunshots.

Dr. Nicholas Batalis conducted Victim's autopsy, which showed four bullet wounds. He testified he did not observe any stippling or soot on Victim's injuries. Dr. Batalis explained soot will not travel further than six to twelve inches from the location where the gun was shot, and stippling will not travel more than two to four feet. This indicated Marshall was not within close range when he shot Victim.

At the close of the immunity hearing, the circuit court denied Marshall's request for immunity under the Act, finding Marshall failed to show the elements of self-defense by a preponderance of the evidence. Specifically, the court noted the inconsistencies (1) within Marshall's testimony at the hearing, (2) between the recorded statement and Marshall's testimony, (3) between Marshall's testimony and Butler's testimony, and (4) between the scientific evidence and Marshall's theory of the case. The case proceeded to a jury trial, and Marshall was convicted of murder and possession of a weapon during the commission of a violent crime. The circuit court sentenced Marshall to concurrent sentences of forty years' imprisonment for murder and five years' imprisonment for the possession of a weapon during the commission of a violent crime. This appeal followed.[1]

**ISSUE ON APPEAL**

---

[1] Marshall's counsel initially filed a motion to be relieved and a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), which raised another issue on appeal. By order filed November 13, 2017, this court denied the motion to be relieved as counsel and ordered the parties to fully brief the issue of whether Marshall was entitled to immunity from prosecution pursuant to the Act.

Did the circuit court err by denying Marshall immunity from prosecution pursuant to the Act?

## STANDARD OF REVIEW

Circuit courts utilize pretrial hearings to determine whether a defendant is entitled to immunity under the Act, employing a preponderance of the evidence standard. *State v. Manning*, 418 S.C. 38, 43, 791 S.E.2d 148, 150 (2016). Appellate courts review an immunity determination for abuse of discretion. *Id*. at 45, 791 S.E.2d at 151. A circuit court abuses its discretion when its ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support. *State v. Jones*, 416 S.C. 283, 290, 786 S.E.2d 132, 136 (2016).

## LAW/ANALYSIS

Marshall argues the circuit court erred in denying him immunity from prosecution under the Act. Specifically, Marshall contends he established by a preponderance of the evidence the elements required for immunity under the Act and the requisite elements of self-defense because (1) he was without fault in bringing on the difficulty because Victim was the initial aggressor, (2) he believed he was in imminent danger and a reasonably prudent person would have held the same belief, (3) he was not engaged in unlawful activity at the time of the fatal altercation with Victim, and (4) he had no duty to retreat because the altercation occurred in a public area of Butler's apartment complex. We disagree.

Subsection 16-11-450(A) of the South Carolina Code (2015) provides, "A person who uses deadly force as permitted by the provisions of this article or another applicable provision of law is justified in using deadly force and is immune from criminal prosecution and civil action for the use of deadly force . . . ." Subsection 16-11-440(C) provides:

> A person who is not engaged in an unlawful activity and who is attacked in another place where he has a right to be, including, but not limited to, his place of business, has no duty to retreat and has the right to stand his ground and meet force with force, including deadly force, if he reasonably believes it is necessary to prevent death or great bodily injury to himself or another person or to prevent the commission of a violent crime as defined in Section 16-1-60.

S.C. Code Ann. § 16-11-440(C) (2015).

To warrant immunity under the Act, there must be a pretrial determination where the accused must demonstrate the elements of self-defense, save the duty to retreat, to the satisfaction of the circuit court by a preponderance of the evidence. *State v. Curry*, 406 S.C. 364, 370–71, 752 S.E.2d 263, 266 (2013). The accused must show (1) he was without fault in bringing on the difficulty; (2) he actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger; and (3) if his defense was based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have held the same belief, or if he actually was in imminent danger, the circumstances "would warrant a man of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life." *Id.* at 371 n.4, 752 S.E.2d at 266 n.4.

We find the circuit court did not abuse its discretion in holding Marshall was not entitled to immunity because he failed to prove the elements of self-defense by a preponderance of the evidence due to inconsistencies in the record. In recent precedent, our supreme court has clarified when inconsistent evidence warrants a denial of immunity from prosecution under the Act. *See State v. Cervantes-Pavon*, 426 S.C. 442, 448–451, 827 S.E.2d 564, 567–69 (2019); *State v. Andrews*, Op. 27894 (S.C. Sup. Ct. filed June 19, 2019) (Shearouse Adv. Sh. No. 25 at 9–12). "[J]ust because conflicting evidence as to an immunity issue exists does not automatically require the court to deny immunity; the court must sit as the fact-finder at this hearing, weigh the evidence presented, and reach a conclusion under the Act." *Cervantes-Pavon*, 426 S.C. at 451, 827 S.E.2d at 569. "Thus, the relevant inquiry is not merely whether there is a conflict in the evidence but, rather, whether the accused has proved an entitlement to immunity under the Act by a preponderance of the evidence." *Andrews*, Op. 27894 at 11–12.

Marshall points to *State v. Douglas* to support his contention that immunity should have been granted. 411 S.C. 307, 768 S.E.2d 232 (Ct. App. 2014). In *Douglas*, this court held the accused proved he acted in self-defense by a preponderance of the evidence when he shot the victim after the victim assaulted him and refused to leave the accused's house. *Id.* at 314, 319, 768 S.E.2d at 236, 240. However, this case differs from *Douglas* because the physical evidence presented in *Douglas* was consistent with the accused's testimony. *Id.* at 319–20, 768 S.E.2d at 239–40. In the instant case, the circuit court found numerous inconsistencies called Marshall's credibility into question and resulted in Marshall failing to establish entitlement to

immunity by the preponderance of the evidence. Such inconsistencies included the sequence of events leading up to the shooting, whether Marshall was standing and whether he was wearing his glasses when he fired the shots towards Victim, whether the shots were continuous, when Marshall put the clip in the gun, and the distance between Marshall and Victim when Marshall fired the gun. The court also noted inconsistencies between Marshall's testimony and Butler's testimony, including what led to the initial argument between Butler and Victim, whether Victim was choking and hitting Butler, and the intensity with which Victim was knocking on the back door. Based on these inconsistencies, the circuit court found Marshall's testimony was unreliable and prevented the court from finding he established the relevant elements of self-defense by a preponderance of the evidence.

The circuit court specifically noted Marshall did not establish by a preponderance of the evidence that he was without fault in bringing about the difficulty. *See Curry*, 406 S.C. at 371 n.4, 752 S.E.2d at 266 n.4 (explaining to establish self-defense, the accused must show he was without fault in bringing on the difficulty); *State v. Jackson*, 227 S.C. 271, 278, 87 S.E.2d 681, 684 (1955) ("[O]ne cannot through his own fault bring on a difficulty and then claim the right of self-defense . . . ."); *State v. Wigington*, 375 S.C. 25, 32, 649 S.E.2d 185, 188 (Ct. App. 2007) ("[O]ne who provokes or initiates an assault cannot escape criminal liability by invoking self[-]defense . . . ." (first alteration in original) (quoting *State v. Bryant*, 336 S.C. 340, 345, 520 S.E.2d 319, 322 (1999))). In *State v. Slater*, our supreme court noted it could be reasonably calculated that the accused brought on the difficulty when he approached an altercation that was already underway with a loaded weapon by his side. 373 S.C. 66, 70, 644 S.E.2d 50, 52 (2007). In the instant case, following the argument between Victim and Butler, the parties separated before Marshall, who was aware Victim was angry, approached Victim at the back door of the apartment and inserted himself—and his gun—into Victim's interactions with Butler. Marshall repeatedly grabbed Victim's wrist and hand, causing Victim to become aggravated and shove Marshall. Based on Marshall's actions, the circuit court found Marshall did not establish by a preponderance of the evidence that he was without fault in bringing about the difficulty.

Based upon our review of the record, we find the circuit court properly weighed the evidence presented and did not abuse its discretion in denying immunity under the Act.

**CONCLUSION**

Thus, the circuit court's denial of immunity is

**AFFIRMED.**[2]

**HUFF and SHORT, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.