**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

William L. McKinney, Appellant.

Appellate Case No. 2023-001692

---

Appeal From Greenville County
Alex Kinlaw, Jr., Circuit Court Judge

---

Unpublished Opinion No. 2026-UP-017
Heard November 12, 2025 – Filed January 21, 2026

---

**AFFIRMED**

---

Deputy Chief Attorney for Capital Appeals David Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General John Benjamin Aplin, both of Columbia; and Solicitor Cynthia S. Crick, of Greenville; all for Respondent.

---

**PER CURIAM:** William McKinney appeals his convictions for attempted murder, possession of a weapon during the commission of a violent crime, and possession of a firearm by a felon, arguing the trial court erred in denying his

motion for immunity and dismissal pursuant to the Protection of Persons and Property Act (the Act).[1]  We affirm.

## STANDARD OF REVIEW

"Circuit courts utilize pretrial hearings to determine whether a defendant is entitled to immunity under the Act, employing a preponderance of the evidence standard." *State v. Dennis*, 444 S.C. 353, 362–63, 907 S.E.2d 142, 147 (Ct. App. 2024), *cert. granted* (April 22, 2025) (quoting *State v. Cervantes-Pavon*, 426 S.C. 442, 449, 827 S.E.2d 564, 567 (2019)).  "An appellate court 'reviews an immunity determination for an abuse of discretion.'" *Id.* at 363, 907 S.E.2d at 147 (quoting *State v. McCarty*, 437 S.C. 355, 365, 878 S.E.2d 902, 908 (2022)).  "An abuse of discretion occurs when the [circuit] court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support."  *Id.* (alteration in original) (quoting *McCarty*, 437 S.C. at 365, 878 S.E.2d at 908). "[T]he circuit court is in the best position to assess witness credibility and make the necessary findings of fact." *McCarty*, 437 S.C. at 375, 878 S.E.2d at 913.  "Further, 'the General Assembly did not intend' to require the circuit court 'to accept the accused's version of the underlying facts' in determining a motion for immunity under the Act."  *Oates*, 421 S.C. at 13, 803 S.E.2d at 918 (quoting *State v. Curry*, 406 S.C. at 364, 371, 752 S.E.2d 263, 266 (2013)).

## LAW/ANALYSIS

### I.  Video

McKinney argues the trial court erred in admitting a video of his jailmate and by declining to follow the rules of evidence at the immunity hearing.  We disagree. The trial court stated it was admitting the video under Rule 104 of the South Carolina Rules of Evidence, which addresses "preliminary questions," thereby indicating the trial court relied on the rules of evidence.  The State claimed at the hearing "the rules of evidence don't apply," but there was no indication the trial court agreed or disregarded the rules of evidence.

Regardless of whether the video was properly admitted, we find its admission was not prejudicial to McKinney.

---

[1] S.C. Code Ann. § 16-11-410 to § 16-11-450 (2015).

The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. Further, to warrant reversal based on the wrongful admission of evidence, the complaining party must prove resulting prejudice. Moreover . . . this court's assessment of prejudice must be viewed from the posture of a bench trial as opposed to a jury trial. It is well-established that it is a near insurmountable burden for a defendant to prove prejudice in the context of a bench trial as a judge is presumed to disregard prejudicial or inadmissible evidence. Consequently, we presume that a trial judge disregards prejudicial or inadmissible evidence. Finally, this presumption will control in the absence of clear evidence to the contrary.

*State v. White*, 446 S.C. 276, 284–85, 919 S.E.2d 37, 41–42 (Ct. App. 2025) (citations omitted). McKinney argues the trial court's references in its order to "the State's evidence, theory, and witness statements" show that it relied on the video in denying him immunity. We disagree. Multiple witness statements asserted that McKinney had a gun and he was there to settle a "beef" with someone. Indeed, according to the victim's statement, McKinney showed him the gun and stated the victim was "not the only one with a gun." Accordingly, even if the video was erroneously admitted, McKinney has not overcome the presumption that the trial court disregarded it, and he has not shown prejudice.

## II. Immunity

Section 16-11-420(A) states "[i]t is the intent of the General Assembly to codify the common law Castle Doctrine which recognizes that a person's home is his castle and to extend the doctrine to include an occupied vehicle and the person's place of business." The pertinent subsection of the Act states:

A person who is not engaged in an unlawful activity and who is attacked in another place where he has a right to be, including, but not limited to, his place of business, has no duty to retreat and has the right to stand his ground and meet force with force, including deadly force, if he reasonably believes it is necessary to prevent death or great bodily injury to himself or another person or to

prevent the commission of a violent crime as defined in Section 16-1-60.

§ 16-11-440(C).  "In determining whether a defendant satisfies section 16-11-440(C), the circuit court must analyze whether, at the time of the incident, he was engaged in an unlawful activity and was attacked in another place where he had a right to be."  *State v. Glenn*, 429 S.C. 108, 119, 838 S.E.2d 491, 497 (2019).

The Act further states:

> A person who uses deadly force as permitted by the provisions of this article or another applicable provision of law is justified in using deadly force and is immune from criminal prosecution and civil action for the use of deadly force, unless the person against whom deadly force was used is a law enforcement officer acting in the performance of his official duties and he identifies himself in accordance with applicable law or the person using deadly force knows or reasonably should have known that the person is a law enforcement officer.

§ 16-11-450(A).  "The Act provides immunity from prosecution for a person who has used deadly force after a trial court determines the person was justified in using such force."  *Dennis*, 444 S.C. at 369, 907 S.E.2d at 151.  "'[A]nother applicable provision of law' includes the common law of self-defense."  *Glenn*, 429 S.C. at 117, 838 S.E.2d at 496.  "Consistent with the Castle Doctrine and the text of the Act, a valid case of self-defense must exist, and the trial court must necessarily consider the elements of self-defense in determining a defendant's entitlement to the Act's immunity."  *Curry*, 406 S.C. at 371, 752 S.E.2d at 266.

In *Glenn*, the court found "the traditional Castle Doctrine" did not apply because the appellant was not attacked on his own premises.  429 S.C. at 122, 838 S.E.2d at 498.  Likewise, here, the Castle Doctrine does not apply because McKinney was not at his residence or business.  The *Glenn* court noted section 16-11-440(A) did not apply because there, as here, the assailant was not "in the process of unlawfully or forcefully entering a dwelling or residence."  *Id.*  Therefore, as in *Glenn*, to obtain immunity, McKinney must satisfy the elements of self-defense.

First, the defendant must be without fault in bringing on the difficulty. Second, the defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger. Third, if his defense is based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have entertained the same belief. If the defendant actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness[,] and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life. Fourth, the defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance.

*Dennis*, 444 S.C. at 369–70, 838 S.E.2d at 151 (alteration in original) (quoting *Glenn*, 429 S.C. at 116, 838 S.E.2d at 495). "[T]he last element, i.e., the duty to retreat, need not be shown when seeking immunity under the Act." *State v. Douglas*, 411 S.C. 307, 318, 768 S.E.2d 232, 239 (Ct. App. 2014).

McKinney argues the trial court's "flawed legal reasoning was that had McKinney never went to the club, the shooting would not have happened." He argues the trial court failed to conduct a proximate cause analysis to the "unlawful activity" portion of the Act as instructed by *Glenn*. *See Glenn*, 429 S.C. at 120–21, 838 S.E.2d at 497 ("[W]e find a proximate cause analysis must also be applied to the unlawful activity element of subsection (C)."). We disagree and find the trial court conducted the proper analysis.

The evidence shows McKinney was engaged in unlawful activity by carrying a weapon as a convicted felon. The trial court considered whether this led to the shooting and concluded McKinney's "own decisions and actions . . . were a direct consequence" of his flashing a gun to the security guard and being at Club Dolce to settle a "beef." This satisfies the requisite proximate cause analysis. Further, we find McKinney was not in "another place where he [had] a right to be, including, but not limited to, his place of business." § 16-11-440(C). McKinney cites *Glenn*, in which our supreme court, in dicta, stated a jogger would be entitled to immunity when arming herself against an attack in a public park past opening hours. *Glenn*, 429 S.C. at 120, 838 S.E.2d at 497. However, the *Glenn* court discussed the

hypothetical in relation to the concept of barring a victim of crime "from claiming immunity based on a hyper-technical reading of the statute . . . when his presence in the place he was attacked had no relation to the incident itself." *Id.* Here, the record shows McKinney was in the parking lot of a private business past opening hours. The trial court noted the security guards were attempting to remove him from the parking lot before he could use his gun, which McKinney had shown them, to settle the "beef." The facts of this case are distinguishable from other cases discussing the "right to be" portion of the Act. *See Dennis*, 444 S.C. at 371, 907 S.E.2d at 152 ("Here, Dennis was in his vehicle at the time of the incident, which is included in the presumption of reasonable fear in the Act."); *Glenn*, 429 S.C. at 113, 838 S.E.2d at 493 ("Glenn was invited to the . . . apartment complex); *Curry*, 406 S.C. at 368, 752 S.E.2d at 265 (noting the appellant was in his mother's apartment). Therefore, we agree with the trial court that McKinney failed to satisfy section 16-11-440(C) because at the time of the incident, he was engaged in an unlawful activity and was not attacked in another place where he had a right to be. *See Glenn*, 429 S.C. at 119, 838 S.E.2d at 497 ("In determining whether a defendant satisfies section 16-11-440(C), the circuit court must analyze whether, at the time of the incident, he was engaged in an unlawful activity and was attacked in another place where he had a right to be.").

Further, the trial court did not err in finding McKinney failed to prove the elements of self-defense by a preponderance of the evidence. The evidence shows McKinney was not without fault in bringing on the difficulty. He displayed his gun to the security guard in a threatening manner, showing his intent to use the gun. He began walking toward people he had a "beef" with while refusing the security guard's command to keep his hands out of his pockets. Because McKinney failed to show by a preponderance of the evidence that he was without fault in bringing on the difficulty, he is not entitled to immunity under the Act.

**AFFIRMED.**

**WILLIAMS, C.J., and THOMAS and CURTIS, JJ., concur.**