# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Kierin Marcellus Dennis, Appellant.

Appellate Case No. 2019-001486

———

Appeal From Lexington County
Eugene C. Griffith Jr., Circuit Court Judge

———

Opinion No. 6082
Heard November 26, 2024 – Filed August 14, 2024
Withdrawn, Substituted, and Refiled October 30, 2024

———

## REVERSED AND REMANDED

———

Chief Appellate Defender Robert Michael Dudek,
Appellate Defender Lara Mary Caudy, and Appellate
Defender Adam Sinclair Ruffin, all of Columbia, for
Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, and
Assistant Attorney General Julianna E. Battenfield, all of
Columbia, and Solicitor Samuel R. Hubbard III, of Lexington,
for Respondent.

———

**THOMAS, J.:** Kierin Marcellus Dennis appeals his conviction for murder,
arguing the trial court erred in (1) relying on evidence from a prior immunity

hearing and mistrial; (2) denying him immunity under the Protection of Persons and Property Act (the Act)[1]; (3) finding he had a duty to retreat under the Act; (4) finding self-defense was a jury issue; (5) finding he had a duty to avoid going to a place he had the right to be; (6) admitting an aerial photograph; and (7) admitting a model car door that was misleading.  We reverse and remand.

**FACTS**

Dennis, at the time a recent graduate of Lexington High School (LHS), was indicted for murder based on the stabbing of a student from the rival school, Dutch Fork High School (DFHS), after a basketball game on February 17, 2014.  The stabbing occurred in the parking lot of a Cook-Out restaurant while Dennis was in his vehicle.  A pre-trial hearing on Dennis's entitlement to immunity under the Act was held in November of 2014 before the Honorable Thomas Russo (the first immunity hearing).  Dennis and numerous LHS students testified, generally supporting Dennis's claim of immunity.  Numerous DFHS students testified, generally not supporting the claim.

By order filed February 10, 2015, the court denied Dennis's request for immunity under the Act, finding Dennis had not met his burden of proving the victim was in the process of entering, or had entered, Dennis's vehicle.  In addition, the court found Dennis's allegation of such an entry or attempt to enter was not credible.  The court also concluded Dennis failed to establish the elements of self-defense.  Thus, the court denied Dennis immunity under the Act.

Dennis was tried in October of 2016.  The jury deadlocked, was given an *Allen*[2] charge, and remained deadlocked after more than ten hours of deliberation.  The Honorable Eugene C. Griffith Jr. declared a mistrial.

---

[1] The Act is informally known as the "Stand Your Ground Law" and was enacted by the South Carolina General Assembly in 2006 to provide a person "is immune from criminal prosecution and civil action for the use of deadly force" in circumstances that are permitted by the Act or by another provision of law.  *See* S.C. Code Ann. § 16-11-450(A) (2015); *State v. McCarty*, 437 S.C. 355, 366, 878 S.E.2d 902, 908 (2022).

[2] *Allen v. United States*, 164 U.S. 492, 501 (1896) (defining the jury charge used to encourage a deadlocked jury to reach a verdict).

In June of 2017, Dennis again filed a motion for immunity under the Act. Dennis argued there was new evidence by Elizabeth Bettini and a manager at Cook-Out, neither of whom were related to either school and both of whom witnessed the events. Dennis also alleged there was new evidence from the pathologist, which was introduced at trial, and new evidence of a 911 recording never produced at trial and evidence from Ervin Meggett, a friend of the victim, who told investigators in August of 2016 that the victim was the aggressor. At a hearing on the motion held in August of 2017 before the Honorable Robert E. Hood (the second immunity hearing), Dennis argued he was entitled to a new hearing based on the new witnesses and evidence. He also argued the previous trial was a mistrial, final, and "we start all over again."

The court refused to allow Dennis a new immunity hearing; however, it ruled Dennis could proffer the new testimony. Dennis called new witnesses to support his claim of immunity. Officer Caitlin Voravudhi, of the Lexington County Police Department, testified she responded to a call at the Cook-Out the night in question and there were approximately forty students there. With her vehicle camera recording and audio being recorded from a microphone she wore, she began interviewing people. She identified Bettini as one of the people and took a statement. Bettini stated she was in the drive-through, saw about thirty teenagers in the parking lot, heard cussing and screaming, and witnessed Dennis's vehicle stop. She stated she then heard him yell, saw a guy ran to his vehicle and throw a drink at him, and then saw about ten male teenagers run toward the vehicle, which then pulled out. A small car then followed it. She called 911 and saw a third car leave. Voravudhi never verified the 911 call, stating she passed the statements on to an investigator. On her recording, a voice can be heard stating, "I saw everything that happened" and "Somebody threw a drink." An employee of Cook-Out can be heard saying he came out for a break and saw someone throw a cup at and lean into Dennis's vehicle. Voravudhi also got a statement from the Cook-Out employee, Zachary Lynch, in which he stated he saw a guy in a white shirt walk to Dennis's car, "reach[] in the car as if to stab somebody." Lynch then saw another guy walk up to the vehicle and throw a cup, followed by two guys getting in the vehicle and the vehicle then leaving.

Janice Edwards Ross was qualified as an expert in forensic pathology. Based on the direction of the knife wound, she testified the victim could have been leaning over at the time he was stabbed. She opined the victim would have had to have been bent over, almost parallel to the ground. She also opined there were many scenarios that would have fit the wound, including if the victim had been standing, the knife would have had to come up and down and if the victim had been stooped

over, it would have had to "go kind of straight parallel to the ground."  Ross testified it depended on how much the window was down and how tall the victim was as to whether someone leaning in the window was consistent with the autopsy findings.

Bettini testified she turned into Cook-Out and saw three kids in the road, describing "they did not have happy faces."  She looked to her right and saw between thirty and forty teenagers, "hollering, cussing, [and] acting crazy."  She saw Dennis's SUV drive up, but kids blocked the road and called the driver names, saying "I'm gonna f***ing kick your ass."  They were running at his car and throwing drinks at it.  Bettini testified she called 911 and told the dispatcher there was about to be a fight and when the car got stopped, the kid looked scared to death.  Bettini was afraid the students would hurt Dennis.  She denied seeing a knife, and told the dispatcher, "I just told you that I saw Cook[-]Out trays and a drink being thrown . . . ."  She next told the dispatcher she heard sirens, which she assumed was why the kids backed away from Dennis's vehicle and he took off.  She testified she heard Dennis say either, "Y'all leave me the f*** alone," or "get the f*** away from me."  She described the kids as constantly moving around his car and the scene as complete chaos.  She assumed the reason Dennis did not leave was because he would have run students over.  She also testified that once the police were on the scene, some of the students still in the parking lot were "cussing [her] out and telling [her] that [she was] trying to get their friend in trouble . . . ."  She concluded, "All I remember is I looked at [Dennis's] face.  He was stopped and there [were] kids and they would not let him leave the parking lot."  Bettini wrote her statement as requested and never heard from anyone again until two years later when the first trial was about to begin.  At that time, the police called her and asked her not to speak to the media if she was contacted.  She next met with the solicitor and was told the 911 tape had been lost.

Lynch testified he was working at Cook-Out that night and gave a statement similar to Bettini's statement.  When he heard people yelling, "He just got stabbed," Lynch thought it was Dennis who got stabbed by the victim because the victim leaned in the car window, hand forward.  Lynch gave a second statement the following morning.  He described the victim leaning in with his right hand, not his whole body but from his stomach up.  He testified the window was "quite low" but up a little bit.  Lynch testified Dennis could have left, but he probably would have run somebody over.

The first 911 call was from the restaurant manager.  A 911 Computer Aided Dispatch (CAD) event was created.  The second 911 call was from Bettini;

however, no CAD event was created. Nikki Rodgers, of Lexington County 911, testified her office received the calls the night of the incident. She explained some calls were left off the relevant CAD report because the calls were associated with different addresses. Years later, her office received a request for information on calls that night and used a management information system that found eight relevant calls. Several of the eight calls, including Bettini's, were not recorded.

The State recalled Alexis Brunson and Devon Chatman, of DFHS. Dennis objected, arguing if the court was going to rely on the transcript of the first immunity hearing for Dennis's witnesses, the State should not have the opportunity to present its witnesses in person for the second immunity hearing. The court allowed the State to continue.

The court then heard arguments on the merits of Dennis's motion, which it described as "a motion to essentially have a second stand your ground hearing . . . ." By order filed October 16, 2017, the court denied the motion for immunity, finding Dennis was not without fault in bringing on the difficulty because he sought out the DFHS students, chose the situation, and chose not to leave via the other exits available to him. The court also found the testimony of Dennis's fear was in direct contradiction to the testimony of the DFHS students, and if he was in fear, it was not a belief a reasonably prudent person would have entertained. The court next found Dennis did not prove he had no other means to avoid the danger. The court concluded,

> Under the facts before this Court, [Dennis's] claim of self-defense presents a quintessential jury question. . . . The direct contradiction between witnesses creates an issue for a jury to decide, not the trial court. Therefore, immunity does not apply because [Dennis] has not proven[,] beyond a preponderance of evidence standard[,] . . . self-defense. The Court finds that [Dennis] has not established the elements of self-defense by the greater weight of the evidence.

Accordingly, the court found Dennis was not entitled to immunity under the Act. Based on that finding, the court declined to rule as to whether Dennis was entitled to a second immunity hearing. After a second trial, Dennis was convicted and sentenced to thirty years' imprisonment. This appeal followed.

**STANDARD OF REVIEW**

"Circuit courts utilize pretrial hearings to determine whether a defendant is entitled to immunity under the Act, employing a preponderance of the evidence standard." *State v. Cervantes-Pavon*, 426 S.C. 442, 449, 827 S.E.2d 564, 567 (2019). An appellate court "reviews an immunity determination for an abuse of discretion." *McCarty*, 437 S.C. at 365, 878 S.E.2d at 908. "An abuse of discretion occurs when the [circuit] court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Id.* (quoting *State v. Jones*, 416 S.C. 283, 290, 786 S.E.2d 132, 136 (2016) (alteration in original).

## LAW/ANALYSIS

### A.     Immunity Hearing After a Mistrial

Dennis argues the court erred in denying him a second immunity hearing after the first trial ended in a mistrial. We agree.

We first find no merit to the State's argument that Dennis was precluded from receiving a new immunity hearing because he failed to appeal the denial of immunity after the first immunity hearing. In *State v. Isaac*, our supreme court "clarif[ied] that an order granting a request for immunity under the Act is immediately appealable because it is a final order in the case. However, an order ***denying*** a request for immunity is not a final order in the case." 405 S.C. 177, 182, 747 S.E.2d 677, 679 (2013) (footnote omitted).

We next hold the court erred in denying Dennis's motion for a new, full immunity hearing. "A mistrial is the equivalent of no trial and leaves the cause pending in the circuit court." *State v. Woods*, 382 S.C. 153, 158, 676 S.E.2d 128, 131 (2009). When a case ends in a mistrial, it is considered a nullity and begins "anew when called again for trial." *Id.*; *State v. Mills*, 281 S.C. 60, 62, 314 S.E.2d 324, 326 (1984), *cert. denied*, 469 U.S. 930 (1984) ("When a mistrial occurs because of the inability of a jury to agree on a verdict, it is the same as if no trial took place."); *Grooms v. Zander*, 246 S.C. 512, 514, 144 S.E.2d 909, 910 (1965) (finding that rulings of a trial judge in a proceeding ending in mistrial represent no binding adjudication upon the parties as the mistrial leaves the parties in status quo ante). After a mistrial, "rulings made with reference to the admissibility and competency of the testimony result[] in no binding adjudication of the rights of the parties." *Keels v. Powell*, 213 S.C. 570, 572, 50 S.E.2d 704, 705 (1948). Although a ruling on immunity under the Act is not a ruling on the admissibility of evidence, we find

the situations analogous. Like evidentiary rulings, the decision on immunity is left to the sound discretion of the trial court. *See State v. Glenn*, 429 S.C. 108, 116, 838 S.E.2d 491, 495 (2019) ("This Court reviews an immunity determination for abuse of discretion. A trial court abuses its discretion when its ruling is based on an error of law, or when grounded in factual conclusions, is without evidentiary support." (internal citation omitted)); *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012) ("The admission or exclusion of evidence is left to the sound discretion of the trial [court], whose decision will not be reversed on appeal absent an abuse of discretion." (quoting *State v. Saltz,* 346 S.C. 114, 121, 551 S.E.2d 240, 244 (2001))); *id.* ("An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." (quoting *State v. Jennings,* 394 S.C. 473, 477–78, 716 S.E.2d 91, 93 (2011))). In some instances, a lengthy pretrial hearing may have been held on the evidentiary matter in dispute. The fact that such issue may have been ruled upon in the first trial does not preclude the defendant from making the same, different, or additional arguments to the trial court on retrial regarding admission or exclusion and does not preclude a different ruling. *See Woods*, 382 S.C. at 158, 676 S.E.2d at 131 ("A mistrial is the equivalent of no trial and leaves the cause pending in the [trial] court."); *State v. Smith*, 336 S.C. 39, 43–44, 518 S.E.2d 294, 296 (Ct. App. 1999) ("Because a mistrial is the equivalent of no trial, the trial [court] could not rely on any evidentiary rulings from the nugatory proceeding."). While evidentiary rulings may not hold the inherent power to completely end a prosecution, in many cases, they can have a similar effect when the controverted evidence, such as a confession or blood test, is the key evidence offered by the State.

Furthermore, jurisprudence from our sister state of Georgia suggests the grant of a new trial restarts the entire prosecutorial process including an immunity hearing. In *State v. Hamilton*, 839 S.E.2d 560, 564 (Ga. 2020), the trial court granted Hamilton a new trial after her conviction of felony murder based on "general grounds" and because "trial counsel rendered constitutionally ineffective assistance by, among other things, failing to move for a pretrial determination on the issue of immunity from criminal prosecution." The Georgia Supreme court affirmed, and Hamilton filed a motion for immunity from prosecution under Georgia's "Stand Your Ground" Act. *Id.* at 565. The court stated,

> the trial court granted Hamilton a new trial . . . . And '[w]hen a new trial has been granted by the court, the case shall be placed on the docket for trial *as though no*

*trial had been had . . . .'* OCGA § 5-5-48 (emphasis supplied). . . . When the trial court granted Hamilton's new trial, the jury verdict against her was set aside. As a result, when the State elected to retry Hamilton, she was free to seek immunity from prosecution under OCGA § 16-3-24.2 before any new trial was conducted.

*Id.* at 565–66; *see State v. Remy*, 840 S.E.2d 385, 388–89 (Ga. 2020) (reiterating that a defendant may file a motion for immunity after a mistrial is declared because a mistrial is the equivalent of no trial at all). Although the defendants in both *Hamilton* and *Remy* had not previously had immunity hearings, the court in each found the mistrial restarted the clock on the defendant's ability to request immunity.

The issue of the use of prior trial transcripts also arose in *Hamilton*. The State argued the trial court erred in admitting the transcript from Hamilton's jury trial and the transcript from the motion for a new trial hearing in the hearing on her motion for immunity. *Id.* at 566. The court considered the admissibility of the transcripts under its Rules of Evidence governing hearsay and its exclusions and affirmed the trial court's admission of the transcripts. *Id.* at 571. However, the court qualified its decision as follows:

> A number of factors lead us to that conclusion. First, there is no dispute that Hamilton's criminal case was fully litigated over the course of an eight-day trial, and that the same judge who presided over that—and who observed the demeanor of witnesses being examined and cross-examined—also presided over Hamilton's motion for new trial and immunity hearings. *Cf.* [*United States v. Mathis*, 559 F.2d 294, 298–99 (5th Cir. 1977)] (reasoning that live testimony is generally favored and considered more probative, at least in part, because the factfinder is able to observe a witness's demeanor, including during cross-examination). Second, the witnesses' prior testimony would have been considered one way or the other at the immunity hearing if they were called to testify, whether that was because a witness was re-subpoenaed and testified in a way that was materially similar to his or her prior testimony, or because a witness was re-subpoenaed and contradicted his or her prior

testimony, thus allowing the prior testimony's admission as a prior inconsistent statement. . . . Third, the trial court accounted for the potential for additional or inconsistent testimony by giving both Hamilton and the State an opportunity to 'hear testimony from any additional witnesses and from witnesses that did testify at trial if the witnesses had any additional newly discovered evidence,' yet the State declined to present any such witnesses or evidence. Finally, and perhaps most importantly, Hamilton's 2011 trial—where many witnesses recounted the events of the many years leading up to [the victim's] death, as well as the events on the day of his death less than a year before the witnesses testified—was conducted more than *eight years* before the hearing on her motion for immunity was held in 2019. . . . Given this unusual procedural posture, and considering the totality of the circumstances, we cannot say that the trial court abused its discretion by admitting the transcripts from Hamilton's trial and the hearing on her motion for new trial into evidence.

*Id.* (internal footnote omitted).

In this case, the second immunity hearing was not held before the judge who conducted the first trial nor the judge who heard the first immunity hearing. In addition, there were less than three years between the first immunity hearing and the second immunity hearing and less than a year between the first trial and the second immunity hearing. We find the unusual circumstances relied upon by the Georgia Supreme Court are absent here, and the court erred in relying on transcripts rather than making its own credibility findings and weighing the evidence. *See McCarty*, 437 S.C. at 372, 878 S.E.2d at 911 ("[T]he circuit court must weigh the evidence and make its own credibility and factual findings before reaching a decision as to immunity."); *State v. Chhith-Berry*, 437 S.C. 527, 542–43, 878 S.E.2d 352, 360 (Ct. App. 2022), *reh'g denied*, (Oct. 20, 2022), *cert. denied*, (May 24, 2023) ("[T]he [trial] court's [immunity] ruling must be based solely on the evidence presented at a pretrial hearing, while the jury's verdict must be based solely on the evidence presented at trial, which may be considerably different." (quoting *Cervantes-Pavon*, 426 S.C. at 452, 827 S.E.2d at 569)).

We hold the court erred in failing to conduct a new immunity hearing and by relying on transcripts to rule on Dennis's entitlement to immunity. Accordingly, we remand for a new immunity hearing. If immunity is granted, the conviction is set aside. If immunity is denied, the conviction stands and Dennis is entitled to appeal the denial of immunity and the trial issues. The trial court on remand is to consider only the evidence at the new hearing. *See McCarty*, 437 S.C. at 375, 878 S.E.2d at 913 (remanding for an immunity hearing "because the circuit court is in the best position to assess witness credibility and make the necessary findings of fact"); *Glenn*, 429 S.C. at 123, 838 S.E.2d at 499 (remanding where the circuit court did not address the elements of self-defense in denying immunity); *Cervantes-Pavon*, 426 S.C. at 452–53, 827 S.E.2d at 569 (remanding where the circuit court erred by, *inter alia*, finding that the immunity issue presented a jury question, while making it "clear[] we are not ordering a new trial, only a new hearing to determine whether Cervantes-Pavon is entitled to immunity under the Act," and rejecting the State's contention that there was evidence from the immunity hearing to support the court's ruling); *id.* (directing the trial court on remand "to rely only upon evidence presented at the new hearing on remand"). We acknowledge that almost ten years have passed since the initial immunity hearing. While the use of contemporaneous, live testimony is the proper mode of evidence on the remand of this case, neither party is precluded from requesting to use prior sworn testimony if it can prove under the Rules of Evidence that doing so is necessary.

## B.    Merits of Dennis's Claim of Immunity

Dennis argues he was entitled to immunity under the Act. As noted above, we find the proper course is to remand "because the circuit court is in the best position to assess witness credibility and make the necessary findings of fact." *McCarty*, 437 S.C. at 375, 878 S.E.2d at 913. However, we review Dennis's remaining issues regarding his claim of immunity.

## 1.    Conflicting Evidence

Dennis first argues the court erred in finding that because there was conflicting evidence as to Dennis's entitlement to immunity, self-defense was a jury issue. We agree.

"A claim of immunity under the Act requires a pretrial determination using a preponderance of the evidence standard, which [appellate] court[s] review[] under an abuse of discretion standard of review." *State v. Jones*, 416 S.C. 283, 290, 786

S.E.2d 132, 136 (2016) (quoting *State v. Curry*, 406 S.C. 364, 370, 752 S.E.2d 263, 266 (2013)). "[J]ust because conflicting evidence as to an immunity issue exists does not automatically require the [trial] court to deny immunity; the [trial] court must sit as the fact-finder at this hearing, weigh the evidence presented, and reach a conclusion under the Act." *State v. Gray*, 438 S.C. 130, 141, 882 S.E.2d 469, 475 (Ct. App. 2022), *reh'g denied* (Jan. 23, 2023), *cert. denied* (Oct. 3, 2023) (alterations in original) (quoting *Cervantes-Pavon*, 426 S.C. at 451, 827 S.E.2d at 569). "[T]he [trial] court, in announcing its ruling, should at least make specific findings on the elements on the record." *Id.* (alterations in original) (quoting *Glenn*, 429 S.C. at 123, 838 S.E.2d at 499). *See State v. Ford*, 439 S.C. 261, 271, 886 S.E.2d 710, 715 (Ct. App. 2023), *cert. denied* (Mar. 5, 2024) ("[T]he circuit court, sitting as fact-finder, must make specific findings that support its immunity decision."); *Gray*, 426 S.C. at 142, 882 S.E.2d at 475 (reversing the trial court's denial of Gray's motion for immunity under the Act because the court "impermissibly abdicated its role as the fact-finder at Gray's immunity hearing").

The court here likewise deferred to the jury, stating the following:

> Under the facts before this Court, [Dennis's] claim of self-defense presents a quintessential jury question. . . . The direct contradiction between witnesses creates an issue for a jury to decide, not the trial court. Therefore, immunity does not apply because [Dennis] has not proven[,] beyond a preponderance of evidence standard[,] . . . self-defense. The Court finds that [Dennis] has not established the elements of self-defense by the greater weight of the evidence.

We find the court erred in deferring to the jury because there were conflicts in the evidence. We acknowledge the State's argument that the court made findings as to the elements of self-defense and its use of the phrases regarding deference to the jury did not affect his analysis. However, we conclude the findings were interspersed with deference to the jury and in violation of the law requiring the court to be the fact-finder at an immunity hearing.

**2.    Duty to Retreat/Avoid the Danger**

Dennis next argues both circuit court judges erred by denying him immunity based upon the legally erroneous reason that he had the duty to retreat and that his

allegation of fear was neither credible nor reasonable.  We address these elements of self-defense in the context of the Act for the trial court's edification on remand.

The Act provides immunity from prosecution for a person who has used deadly force after a trial court determines the person was justified in using such force. The general four elements a defendant must meet to justify the use of deadly force under the common law of self-defense are the following:

> First, the defendant must be without fault in bringing on the difficulty.  Second, the defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger.  Third, if his defense is based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have entertained the same belief.  If the defendant actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness[,] and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life. Fourth, the defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance.

*Glenn*, 429 S.C. at 116, 838 S.E.2d at 495.

The Act provides immunity as follows:

> (A) A person who uses deadly force *as permitted by the provisions of this article or another applicable provision of law* is justified in using deadly force and is immune from criminal prosecution and civil action for the use of deadly force, unless the person against whom deadly force was used is a law enforcement officer acting in the performance of his official duties and he identifies himself in accordance with applicable law or the person using deadly force knows or reasonably should have

known that the person is a law enforcement officer.

S.C. Code Ann. § 16-11-450 (2015) (emphasis added). "'[A]nother applicable provision of law' includes the common law of self-defense." *Glenn*, 429 S.C. at 117, 838 S.E.2d at 496.

Dennis argues the court erred in denying immunity based on Dennis's failure to retreat and because he went to Cook-Out. In its order, the court found Dennis sought out the DFHS students and chose the situation, which is in contradiction to Dennis's right to be there. In addition, the court found Dennis chose not to leave using other exits available to him, indicating the application of the duty to retreat element of self-defense.

Dennis claimed immunity under both sections 16-11-440(A) and (C) of the Act. "[A] trial court should first consider whether the defendant has proved the elements of self-defense by a preponderance of the evidence. If the defendant has failed to meet the elements of reasonable fear or the duty to retreat, the court should then determine whether section 16-11-440(A) or (C) is applicable." *Id.*

Section 16-11-440(A) provides the following:

> (A) A person is presumed to have a reasonable fear of imminent peril of death or great bodily injury to himself or another person when using deadly force that is intended or likely to cause death or great bodily injury to another person if the person:
> (1) against whom the deadly force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcibly entered a dwelling, residence, *or occupied vehicle*, or if he removes or is attempting to remove another person against his will from the dwelling, residence, or occupied vehicle; and
> (2) who uses deadly force knows or has reason to believe that an unlawful and forcible entry or unlawful and forcible act is occurring or has occurred

S.C. Code Ann. § 16-11-440(A) (2015) (emphasis added). "Section 16-11-440(A) may, under appropriate facts, replace the reasonable fear element of self-defense by providing a presumption that the person's fear was reasonable under certain

circumstances . . . ." *Glenn*, 429 S.C. at 118, 838 S.E.2d at 496. Here, Dennis was in his vehicle at the time of the incident, which is included in the presumption of reasonable fear in the Act. As to findings regarding fear, Dennis argues, "Oddly, [the court] found [he] failed to prove this second element, that he actually was in imminent danger . . . or he believed he was . . . because [he] did not avoid the situation at the Cook[-]Out." The court also found "the testimony as to the 'fear in his eyes,' given by [Bettini] and [Dennis, is] in direct contradiction with the testimony of the" DFHS students. Dennis maintains he met the third element of self-defense—a reasonably prudent person of ordinary firmness and courage would have likewise believed he was in imminent danger—and that he was in fact in such imminent danger. The court found Dennis did not meet this element because there was "inconsistent testimony." However, the court did not elaborate, and as we previously discussed, we find the court's deferral of factfinding to the jury on contradictory evidence was erroneous.

"The presumption of subsection (A) does not apply, however, 'if the victim has an equal right to be in the dwelling or residence.'" *Id.* (quoting *State v. Jones*, 416 S.C. 283, 292, 786 S.E.2d 132, 137 (2016)). We find the same analysis applies to one's vehicle. Thus, although the victim also had the right to be at Cook-Out, he did not have the right to be in Dennis's occupied vehicle, as Dennis did, during the confrontation. Therefore, the presumption that Dennis's fear was reasonable applied to the extent he met his burden of showing the victim was unlawfully in or entering his vehicle.

"[I]n cases where the defendant has not proved the duty to retreat element by a preponderance of the evidence, the court should then consider whether section 16-11-440(C) is applicable . . . ." *Id.* at 118–19, 838 S.E.2d at 496. Section 16-11-440(C) provides:

> A person who is not engaged in an unlawful activity and
> who is attacked in another place where he has a right to
> be, including, but not limited to, his place of business,
> *has no duty to retreat* and has the right to stand his
> ground and meet force with force, including deadly force,
> if he reasonably believes it is necessary to prevent death
> or great bodily injury to himself or another person or to
> prevent the commission of a violent crime . . . .

S.C. Code Ann. § 16-11-440(C) (2015) (emphasis added). "Where the section is applicable, it replaces the duty to retreat element required to establish self-defense." *Glenn*, 429 S.C. at 118, 838 S.E.2d at 496.

On remand, the trial court must make specific findings of fact in compliance with any applicable presumptions afforded to Dennis in the Act.

## C.     Evidentiary Issues at Trial

We decline to reach the evidentiary issues raised by Dennis. *See State v. Mekler*, 379 S.C. 12, 17, 664 S.E.2d 477, 479 (2008) (affirming this court's decision reversing defendant's conviction and granting a new trial, but finding it unnecessary to address another issue concerning the admission of evidence decided by this court, noting whether the issue would arise on retrial and its resolution would depend upon the evidence and testimony presented, and would be for the trial judge's consideration); *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive). However, we note that if the circuit court on remand denies Dennis immunity and he appeals, he may raise these evidentiary issues.

## CONCLUSION

We reverse and remand for a new immunity hearing in accordance with this opinion.

**REVERSED AND REMANDED.**

**KONDUROS and GEATHERS, JJ., concur.**